**MAGNUS ELECTRONICS,
INC., Plaintiff,**

**v.**

**MASCO CORPORATION OF INDIANA,
an Indiana corporation; R.T.D. Corp.,
as successor in interest to Browning
Communications, Inc. and Browning
Communications, Inc., both Illinois
corporations; and A.N. Fischer, an individual, Defendants–Appellees.**

**Appeal of Scott BRAINERD and
Brainerd & Bridges.**

**No. 88–1268.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1988.

Decided March 22, 1989.

---

Andrew Brainerd, John L. Gubbins & Assoc., Chicago, Ill., for plaintiff.

Walter C. Greenough, Schiff, Hardin & Waite, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, WOOD, Jr., and FLAUM, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This is a case in which the dispute between the attorneys has outlasted the underlying legal claims. The district judge imposed sanctions pursuant to Rule 11 and Rule 37 of the Federal Rules of Civil Procedure on counsel for Magnus Electronics, Inc. (Magnus) after a long history of friction between opposing counsels. Counsel for Magnus appeals. We affirm the district judge's sanction of $6,631.13 in attorneys' fees but vacate the district judge's decision to add $1,000 to the amount of attorneys' fees requested.

## I. FACTS

This appeal has a convoluted past that we will describe in some detail. Defendant-appellee Masco Corporation of Indiana (Masco), a secured creditor of defendant Browning Communications, Inc. (Browning), seized certain inventory possessed by Browning when it became apparent to Masco that Browning was facing financial difficulties. Plaintiff Magnus promptly complained that some of the inventory seized by Masco actually belonged to Magnus. Masco and Magnus began to negotiate the return of that portion of the inventory that belonged to Magnus. Eventually, Magnus signed a release in exchange for the return of the inventory. Dissatisfied with the goods as returned to it, however, Magnus later claimed that Masco secured the release through fraud and duress. Magnus's counsel, Andrew and Scott Brainerd (the Brainerds),[1] filed a complaint which alleged that the release was void and that Masco

---

1. Andrew Brainerd is Scott Brainerd's father. He was also Magnus's counsel before Scott Brainerd took over.

was liable to Magnus for damages resulting from Masco's possession of the inventory.

During a preliminary hearing to establish a discovery schedule, Masco raised the issue of whether the Brainerds should withdraw as Magnus's counsel because the Brainerds helped to negotiate the terms of the release agreement in dispute. The Brainerds claimed that they did not negotiate the release for Magnus and did not intend to act as witnesses if the matter went to trial. Faced with a withdrawal problem and counsel who were reluctant to withdraw, the magistrate[2] ruled that the Brainerds could continue representing Magnus, at least temporarily, but also invited the Brainerds to suggest a solution to the withdrawal problem. This set the stage for what transpired next in the district court.

Apparently attempting to remedy the withdrawal problem by deleting references to its counsel in the pleadings, Magnus brought a motion to amend its complaint before the district judge. The district judge sensed, however, that the substantive withdrawal problem remained unresolved and questioned whether he could rule on Magnus's motion if the withdrawal issue remained before the magistrate. Scott Brainerd argued that the magistrate had definitely ruled on the withdrawal issue in Magnus's favor, but Masco's counsel stated that Masco had a pending request to depose the Brainerds to determine whether they were involved in the release negotiations. The district judge, perplexed by the magistrate's conflicting orders and counsels' arguments, ordered the attorneys to wait until he heard the other motions before him that morning, after which they could continue to argue the issue.

Without disclosing his plans to Masco's counsel seated in the courtroom, Scott Brainerd went to the magistrate's office during this break to obtain a letter explaining the magistrate's position on the withdrawal issue. Scott Brainerd talked to the magistrate's clerk who then spoke to the magistrate. Under the impression that the district judge had asked for a letter, the magistrate wrote to the district judge and Scott Brainerd presented the letter to him. The district judge, however, stated that he would not rely upon a letter obtained *ex parte* and referred the motion to the magistrate.

When the magistrate realized that the district judge had not himself requested the letter, the magistrate became irritated. He felt that Scott Brainerd had misrepresented the situation to obtain the letter. The magistrate wrote in his subsequent order that, unless the district judge had specifically requested the letter, the magistrate would never have written this hasty missive.

To make matters worse, the magistrate felt that Magnus was not cooperating in discovery. According to the magistrate, Magnus repeatedly challenged his orders, filed a frivolous motion to reconsider, refused to make a witness available for deposition after the magistrate so ordered, requested information that the magistrate ruled had already been provided, and dwelled on matters involving personality rather than the issues of the case. The magistrate had enough. He sanctioned Scott Brainerd, the firm, and the client under Federal Rules of Civil Procedure 11 and 37 for their actions during discovery and for filing a frivolous motion to reconsider the discovery order.

One tangential incident needs to be added at this point, as it bears on some of what the magistrate believed to be the Brainerds' extraneous arguments. Andrew Brainerd claimed that Masco's counsel disparaged him in a public elevator following a status hearing. Andrew Brainerd moved the court for an evidentiary hearing on the "truth of the statements made," but the magistrate denied the motion because he

---

**2.** Actually two magistrates were involved with this case. The first magistrate decided several procedural matters but did not reach much of the substance of this appeal before the case was moved from her docket to the docket of the second magistrate. Unless specifically noted, we are referring to the second magistrate when we discuss "the magistrate's" statements or actions in this opinion.

believed that a hearing would be a misuse of judicial resources and a waste of time. Despite the magistrate's ruling, the incident remained on Andrew Brainerd's mind, became one of the issues in the motion to reconsider, and resurfaced again in this appeal.

On May 29, 1986, the Brainerds voluntarily withdrew as counsel for Magnus; Magnus's new counsel eventually settled the case. Under the terms of the settlement, Magnus dismissed the suit and the defendants waived the $2,762.12 in sanctions assessed against Magnus.

The Brainerds objected in the district court to the magistrate's sanctions. The district judge adopted the magistrate's recommendation of $4,031.13 in sanctions and added some sanctions of his own. 118 F.R.D. 443. The district judge awarded Masco $2,600 in attorneys' fees for defending the motions brought in the district court and added an extra $1,000 to Masco's request in order to penalize the Brainerds. Scott Brainerd and his firm appeal the district court's award of attorneys' fees; Magnus takes no part in this appeal.

## II. ANALYSIS

The district judge adopted the magistrate's recommendation to sanction Magnus's counsel pursuant to both Rule 11 and Rule 37 and added his own sanctions under Rule 11. Because the bulk of the sanctions come under Rule 11, we will begin by analyzing the claims under Rule 11 and discuss Rule 37 when it becomes pertinent.

■ Under Rule 11,[3] the district judge must determine, based on the objective record, whether a sanctioned party took a reasonable position under the circumstances. *Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1126 (7th Cir.1988). A position is unreasonable if it is frivolous or improper. *Id.* An attorney takes a frivolous position if he fails to make a reasonable inquiry into facts (which later prove false) or takes a position unwarranted by existing law or a good faith argument for its modification. *See Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1036 (7th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). An attorney takes an improper stance if he files a paper for any inappropriate purpose, including a desire to delay the suit, harass the other party, or increase the costs of litigation. *Id.* Once the court has determined the reasonableness of the sanctioned party's position, it then must impose an "appropriate" sanction. *See Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1434 (7th Cir.1987).

### A. The Standard of Review

We first must examine what standard of review to apply to a district judge's decision to impose sanctions under Rule 11. We have previously stated that in determining whether the sanctioned attorney violated Rule 11 we will review questions of fact using a clearly erroneous standard but will examine questions of law *de novo*. *Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir.1988); *see, e.g., S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.*, 842 F.2d 946, 948 (7th Cir.1988); *Brown*, 830 F.2d at 1434. Once we have examined the issue of whether the attorney violated Rule 11, we will then review the appropriateness of the sanction under an abuse of discretion standard. *See Brown*, 830 F.2d at 1434.

---

**3.** Specifically, Rule 11 states in part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

This circuit and other circuits, however, have recently questioned whether it is appropriate to review *de novo* a district judge's decision regarding the frivolity of a particular position taken by the sanctioned party. Although this court's precedents presently remain unsettled, we are not precluded from deciding the issues set before us in the present case. *See Mars Steel Corp. v. Continental Illinois Nat'l Bank and Trust Co.*, No. 88–1554 (7th Cir. Feb. 16, 1989) (order setting *en banc* hearing on issue of applicable standard of review in sanctions cases). Applying any of the variations of the standard of review currently deemed appropriate in this circuit, we would reach the same decision regarding the district court's sanctions of the Brainerds.

### B. *The Magistrate's Sanctions*

#### 1. Discovery Related Matters

Having jurisdiction to review the district judge's decision pursuant to 28 U.S.C. § 1291, we will discuss the sanctions originally recommended by the magistrate separate from those added by the district judge. The magistrate recommended that the district judge sanction Magnus's counsel for two veins of activity. First, the magistrate ordered sanctions against both Scott Brainerd and his firm for moving to reconsider the magistrate's discovery order and failing to cooperate in the related discovery; and second, the magistrate suggested sanctions against Scott Brainerd for communicating with the magistrate *ex parte*.

■ We find that the motion to reconsider violated Rule 11. A motion to reconsider is frivolous if it contains no new evidence or arguments of law that explain why the magistrate should change an original order that was proper when made. *Cf. Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 559 (9th Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987) (motion to reconsider with no new evidence is frivolous if district judge previously held that old evidence was insufficient); *Brown v. National Bd. of Medical Examiners*, 800 F.2d 168, 173 (7th Cir.1986) (motion to reconsider sanctions that merely reproduc-

es the original motion to produce violates Rule 11). The magistrate described with commendable detail a number of incidents that indicate that his orders were well grounded in law and fact but that the Brainerds' motion to reconsider was not. We need not discuss each of the Brainerds' claims in detail; we will, however, describe an incident that illustrates our decision.

The Brainerds refused to produce Rosalind and Frank Reinhard in Chicago for their depositions and moved to reconsider the magistrate's order that the Reinhards should be produced. The law supported the magistrate's order that the Brainerds produce the Reinhards as corporate officers in Chicago, Magnus's principal place of business. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979); *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D.Ill. 1982) ("As a general rule, the deposition of a corporation by its agents and officers should be taken at its principal place of business."); 8 C. Wright & A. Miller, Federal Practice & Procedure § 2112, at 410 (1970); 4 J. Moore, J. Lucas & G. Grotheer, Jr., Moore's Federal Practice ¶ 26.70[1.–4] (2d ed. 1987). The facts indicated that the Reinhards were officers of Magnus: In Magnus's 1984 and 1986 tax returns both Frank and Rosalind Reinhard were shown as officers of Magnus devoting 100% of their time to the corporation, and in Magnus's response to Masco's interrogatories, Frank Reinhard was listed as a person with knowledge of the facts of the complaint. Furthermore the Brainerds provided no evidence that the Reinhards had resigned from their previous positions. Despite these uncontroverted facts, the Brainerds asserted that the Reinhards were not officers at the time at issue. The law established that Magnus's officers should be deposed in Chicago; the unrefuted facts showed that Frank and Rosalind Reinhard were officers; and yet, the Brainerds refused to produce the Reinhards. The magistrate properly ordered the Brainerds to produce the Reinhards in Chicago. The Brainerds' motion to reconsider was frivolous because it reiterated their previous

arguments with no new evidence or law to back their claim.

In the motion to reconsider, the Brainerds also argued that they had in fact complied with the original order by producing Rosalind Reinhard during the week of April 7. As the magistrate pointed out, this was not in compliance with his orders. The magistrate had earlier rejected the week of April 7 because the Brainerds offered this date at a status hearing on April 2, which gave Masco's counsel too little time to prepare.

■ The Brainerds' position with regard to the Reinhards' depositions, in addition to violating Rule 11, also violates Rule 37. Rule 37(b)(2) states:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may
>
> . . . . .
>
> ... require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure.

Fed.R.Civ.P. 37(b)(2). We have in the past held that, if a party fails to comply with discovery, the district court may award attorneys' fees under Rule 37. *See Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 471 (7th Cir.1984); *Weigel v. Shapiro*, 608 F.2d 268, 272 (7th Cir.1979); *Ben Sager Chemicals Int'l v. E. Targosz & Co.*, 560 F.2d 805, 807 (7th Cir.1977). *Cf. Smith v. Rowe*, 761 F.2d 360, 366 (7th Cir.1985) (court may award attorney fees under Rule 37); *EEOC v. Kenosha Unified School Dist. No. 1*, 620 F.2d 1220, 1227 (7th Cir. 1980) (district court awards attorney fees but appellate court reverses because of government immunity). We review the district court's decision under Rule 37 using an abuse of discretion standard. *See Tamari*, 729 F.2d at 472. As the magistrate recommended, a court may sanction an attorney for repeatedly failing to produce a witness who the attorney was ordered to make available. *See Taylor v. Medtronics, Inc.*, 861 F.2d 980, 986 (6th Cir.1988).

The record shows that the magistrate encouraged the Brainerds to comply and that the Brainerds stubbornly refused to obey the magistrate's orders. The magistrate entreated to the Brainerds' sense of fairness:

> ... I think that obviously we have got to consider what's reasonably fair in this case. And if the defendants are bringing people in when they have *no* obligation to do so, it seems to me that they're entitled to some measure of reciprocity.

The magistrate attempted reason:

> Mr. Brainerd: If [Frank Reinhard] does come into town we will make him available.
>
> Magistrate: Well, that's probably not quite good enough.
>
> . . . . .
>
> It's obviously much cheaper I would think for all of you to bring him in than to have all of the lawyers travel to California with all of the documents and depose him.
>
> Mr. Brainerd: Unquestionably.

Finally, when summarizing the discovery resolutions reached on April 2, the magistrate stated affirmatively that Magnus should bring Rosalind Reinhard to Chicago for her deposition. Appellants' Exhibit L at 3. The Brainerds did not object but did not make Rosalind Reinhard available either.

The Reinhard depositions were not isolated incidents of the Brainerds' noncompliance. The magistrate's findings, adopted by the district judge, indicate that the Brainerds failed to turn over to the magistrate an income tax return in their possession which the magistrate requested but the Brainerds asserted did not exist, inaccurately represented a prior order of the previous magistrate, entered discovery conferences in bad faith, filed requests for documents already tendered, and took arbitrary positions throughout the proceedings. The Brainerds have not presented evidence that would indicate that the findings were incorrect. We believe that it was within the district court's discretion to sanction Magnus's counsel under Rule 37.

### 2. The *Ex Parte* Communication

█ In addition to sanctioning Magnus's counsel for discovery related matters, the magistrate recommended $1,269 in sanctions under Rule 11 against Scott Brainerd for the *ex parte* communication with the magistrate. Although neither party discussed whether the district judge should have relied on Rule 11, we begin by addressing the question ourselves.

Rule 11 explicitly applies to *signed* papers. Fed.R.Civ.P. 11. *Cf. Reprosystem, B.V. v. SCM Corp.*, 630 F.Supp. 1099, 1102 (S.D.N.Y.1986) (oral representations made in the course of negotiations not sanctionable under Rule 11). Given the unusual nature of the *ex parte* letter, we are not surprised that the district judge treated it like an affidavit and grounded his decision to impose sanctions in Rule 11. The letter obtained from the magistrate through the *ex parte* communication was not signed by Scott Brainerd, but Scott Brainerd submitted and relied upon the letter as support for a signed motion to amend the complaint. Scott Brainerd did not formally attach the letter to the motion because he wrongfully acquired and proffered it in the middle of the hearing. The district judge ordered the letter to be filed as part of the record. We have previously stated that a court may hold an attorney accountable under Rule 11 for affidavits that are "the result" of the attorney's work. *See Stewart v. RCA Corp.*, 790 F.2d 624, 632 (7th Cir.1986).

Nevertheless, we need not decide today whether an unsigned letter submitted by an attorney in support of a signed motion satisfies Rule 11 because the district judge had another source of authority for imposing these sanctions. We believe that the district judge had authority to sanction Scott Brainerd pursuant to the inherent authority of a court to discipline attorneys practicing before it. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980);

*Adduono v. World Hockey Ass'n*, 824 F.2d 617, 622 (8th Cir.1987); *Textor v. Board of Regents*, 711 F.2d 1387, 1394 (7th Cir.1983); *McCandless v. Great Atlantic & Pacific Tea Co.*, 529 F.Supp. 476, 478 (N.D.Ill. 1982), *aff'd*, 697 F.2d 198 (7th Cir.1983). The district court possesses the "inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1209 (11th Cir.1985). The district court must exercise its inherent powers with restraint and discretion because inherent powers, by their very nature, are shielded from direct democratic control. *Roadway Express*, 447 U.S. at 764, 100 S.Ct. at 2463. In keeping with that authority, the district court may assess costs and attorneys' fees against counsel who willfully abuse judicial processes. *See* 447 U.S. at 766, 100 S.Ct. at 2464; *Kleiner*, 751 F.2d at 1209; *Textor*, 711 F.2d at 1395. The district court may find willfulness, or bad faith, in the manner in which the attorney conducts the litigation. *See* 447 U.S. at 766, 100 S.Ct. at 2464.

Here the district judge had sufficient justification to exercise his inherent authority and sanction Scott Brainerd. According to the magistrate's findings, which the district judge adopted wholesale, the magistrate warned Scott Brainerd not to contact the courts without notifying opposing counsel. Scott Brainerd went to the magistrate's office anyway, fully aware that opposing counsel was waiting in the district courtroom at the time. *See* Appellants' Exhibit J at 2–3. Scott Brainerd then asked the magistrate's clerk to request from the magistrate a letter that explained the magistrate's position on the withdrawal issue. *See id.* This unrefuted record indicates that Scott Brainerd acted in direct contravention of the magistrate's instructions and with full awareness that opposing counsel was nearby. His actions were tantamount to willful disregard for the court's authority.[4]

---

**4.** Scott Brainerd also tendered the *ex parte* letter to the district judge as a factually accurate description of the case. And yet, the letter misrepresented the status of the withdrawal issue. As

the magistrate later admitted, in his haste to attend a scheduled court matter, he inaccurately added a sentence, specifically requested by Scott Brainerd, suggesting that no motions were

Furthermore, this court and other courts have voiced in the past their disapproval for *ex parte* communications. *See Chicago, Milw., St. Paul & Pac. R.R. v. United States*, 585 F.2d 254, 263 (7th Cir.1978); *Grieco v. Meachum*, 533 F.2d 713, 719 (1st Cir.), *cert. denied sub nom., Cassesso v. Meachum*, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976); *cf. Home Box Office, Inc. v. FCC*, 567 F.2d 9, 53–54 (D.C.Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). Rule 7–110(b) of the Illinois Code of Professional Responsibility states: "In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except ... (3) orally upon adequate notice to opposing counsel...." Ill.Ann.Stat. ch. 110A, Rule 7–110 (Smith–Hurd 1985). The record shows that Scott Brainerd deliberately sought to communicate *ex parte* with the magistrate and breached a settled rule of court. The district court had authority to sanction him.

### C. *The District Court's Sanctions*

■ We now turn our attention to the sanctions added by the district judge. The district judge imposed an additional sanction on the Brainerds for "appealing" the magistrate's orders. The district judge stated: "Although purportedly 'appeals' of the magistrate's order, the Brainerds' papers—running hundreds of pages and including in 'appendices' arguments which should have been included in the body of the briefs—are in fact frivolous attacks upon the magistrate and opposing counsel." The district judge does not describe with great specificity which positions he finds groundless. We find ample evidence

in the record, however, to support his conclusion.

We infer from the district judge's comments that he found particularly frivolous the Brainerds' claims that the magistrate ruled against them because they had irritated the magistrate. We have reviewed the record and have found that the magistrate grounded his rulings in the law. And in fact, the magistrate did not rule against the Brainerds on all matters. The magistrate ruled that the Brainerds could continue to represent Magnus despite Masco's allegations that the Brainerds were witnesses to the release agreement. We do not believe that the magistrate was biased against the Brainerds. The Brainerds' position that the magistrate based his rulings on bias was factually frivolous.

The district judge also refers to the Brainerds' repeated requests for an evidentiary hearing on the allegedly disparaging comments made by Masco's counsel in the elevator. Although we commend Andrew Brainerd for attending to his reputation as an attorney and believe that attorneys should be civil to one another both inside and outside the courtroom, we agree with the district judge that belaboring the issue violated Rule 11. The purpose of Rule 11 is to discourage groundless, irrelevant proceedings. *Cf. Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir.1988) (mountainous piles of unorganized documents and citation to nonexistent rules of law can lead to Rule 11 sanctions). One attorney's opinion of another, spoken in the elevator outside the courtroom, is normally not relevant to the underlying case and therefore is best ignored. The magistrate heard the parties' arguments with regard to this elevator incident and decided that the matter did not concern the underlying lawsuit. The Brainerds provided no additional evidence

---

pending before him. This was erroneous because Masco's counsel had earlier asked to depose the Brainerds and the magistrate had not yet ruled on their request. *Compare* Appellants' Exhibit M at 20–25 *with* Appellants' Exhibit H. The magistrate did not realize his error at the time he wrote the letter.

Scott Brainerd did not merely fail to correct the magistrate; he affirmatively requested the erroneous sentence. As lead counsel for Mag-

nus, Scott Brainerd should have been intimately aware of the issues previously argued before the magistrate and the issues that were still pending. He should not have requested what he should have known was an inaccurate description of the case. By using this letter containing a false statement of the facts, Scott Brainerd presented a factually inaccurate account of what transpired before the magistrate to the district judge.

to the contrary when bringing the motion before the district judge. Furthermore, we have examined the record and can only conclude that the matter was not part of the substantive dispute. It therefore was an irrelevant issue to the lawsuit. We believe that the district judge properly assessed the Brainerds for pursuing a matter irrelevant to the underlying lawsuit. We also find the Brainerds' due process argument to be without merit for similar reasons.

### D. The Reasonableness of the Attorneys' Fees

 Rule 11 requires the judge to impose sanctions that are reasonable and to specify the reasons for the sanctions and manner of computation. *See Brown*, 830 F.2d at 1437. Upon reviewing the record, we find that the fees were reasonably incurred and assessed with one exception. The district judge added a $1,000 sanction to the fees requested by Masco's counsel "as punishment for their [the Brainerds'] outrageous conduct throughout this lawsuit and in order to deter such conduct in the future." We find that the district judge unreasonably assessed the Brainerds by tacking on an arbitrary sum to the attorneys' fees requested.

 A district judge, once the grounds for sanctions have been established, may impose various costs and expenses upon the attorney. The district judge is free to fine an attorney for the court's time, but that fine must be based on court costs and paid to the clerk's office. *See, e.g., Nixon v. Rose*, 631 F.Supp. 794, 797 (N.D.Ind. 1985); *Robinson v. Moses*, 644 F.Supp. 975, 982 (N.D.Ind.1986). Similarly, a district judge may impose sanctions equivalent to the attorneys' fees reasonably incurred by opposing counsel. The district judge here, however, abused his discretion when he simply added an extra $1,000 to the fees requested by opposing counsel in order to penalize the Brainerds.

The district judge read *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, as support for his decision to impose an extra $1,000 penalty. While *Brown* does indicate that one of the purposes of Rule 11 is to deter attorneys from taking frivolous or improper positions, the decision read in its entirety does not permit a district judge to impose an arbitrary sum on the sanctioned attorney merely to emphasize a point. In fact, the court in *Brown* remanded the suit to the district court in order for that court to specify the manner in which the sanctions were computed. *See id.* at 1438. Furthermore, the *Brown* court commented on the deterrence rationale for Rule 11 sanctions as a way of explaining why a district court might impose a *lesser* amount of sanctions than the attorneys' fees requested. 830 F.2d at 1439. The court in *Brown* suggested that a nominal amount might be imposed to deter frivolous claims. *See id.* The district court's reliance on *Brown* was misplaced. For this reason we hold that the Brainerds need not pay the additional $1,000 to opposing counsel.

## III. CONCLUSION

 We decline to further sanction the Brainerds under Rule 38 of the Federal Rules of Appellate Procedure for appealing the district court's decision. We do not find the appeal to be completely frivolous or improper given the confused nature of the entire proceedings below and the Brainerds' legitimate complaint with regard to the extra $1,000 sanction.

We AFFIRM the district court's decision to sanction Scott Brainerd in the amount of $2,569.00 and the law firm of Brainerd & Bridges in the amount of $4,062.13, but VACATE the district court's decision to assess $1,000 more against appellants.