**TEAMSTERS LOCAL NO. 579,**
Plaintiff–Appellee,

v.

**B & M TRANSIT, INC.,**
Defendant–Appellant.

Nos. 88–2962, 88–3172.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1989.

Decided Aug. 17, 1989.

Frederick Perillo, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, Milwaukee, Wis., for plaintiff-appellee.

John H. Zawadsky, Whyte & Hirschboeck, Madison, Wis., for defendant-appellant.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and WILL, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

Teamsters Local Union 579 (the Union) and B & M Transit (B & M or the Compa-

ny) disputed whether certain B & M employees were required under the collective bargaining agreement to become members of the Union. This case is a product of that discord. An arbitration panel ruled in favor of the Union and the Union sought confirmation from the district court. The district court confirmed the arbitration award and sanctioned the Company under Rule 11 of the Federal Rules of Civil Procedure for its conduct during the litigation. The Company appeals, arguing that the district court incorrectly ruled that the Company was barred from raising affirmative defenses because it failed to move that the court vacate the award within the three-month statute of limitations. The Company also claims that the district court exceeded its authority by interpreting an ambiguous arbitration award and that the sanctions were unwarranted because some of the Company's arguments had merit. We reject the Company's assertions and affirm the district court.

## I. FACTUAL BACKGROUND

On May 12, 1987 the Union filed a grievance against the Company protesting that B & M casual drivers and owner-driver Thomas G. McCaffrey had not joined the Union as required by the collective bargaining agreement.[1] The Union demanded that the Company order the casual drivers and McCaffrey to join the Union and terminate (within seventy-two hours of notification by the Union) those who refused to comply.

On July 21, 1987 the Union requested arbitration of its grievance. A Joint Grievance Committee panel (the Committee), composed of both management and labor representatives, held a hearing on August 31, 1987 to address the issues raised by the Union. At the hearing the Company contended that the Committee should postpone deciding the casual drivers issue because a related unfair labor practice charge (that the Company had filed ten days after the

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. The collective bargaining agreement includes the 1985–1988 National Master Freight Agreement, Central States Area Iron and Steel and Truckload Supplement, and the Addendum or Rider negotiated locally.

Union requested arbitration) was then pending before the National Labor Relations Board (NLRB).[2] After a recess, the Committee rejected the Company's argument and ruled that the Company should address both issues before the Committee. The Committee then issued this decision:

Thomas G. McCaffrey comes within the bargaining unit covered by the labor agreement between the parties. The company is instructed to comply with the terms of its labor agreement with Local 579 including the Addendum thereto.

No one questioned the decision when it was rendered. The Company advised McCaffrey of the decision on September 1, 1987 and McCaffrey quit driving for the Company on September 30, 1987.

On May 10, 1988, approximately eight months after the Committee issued its decision, the Union filed a complaint with the district court to enforce the decision. Both parties moved for summary judgment; the district court granted summary judgment in favor of the Union and requested that the Union submit an itemized list of its attorney's fees and costs. On October 14, 1988 the district court ordered the judgment amended to award $7,025 in attorney's fees to the Union. The Company appeals.

The district court had jurisdiction to entertain a motion to enforce the arbitration award under § 301(a) of the Labor–Management Relations Act, 29 U.S.C. § 185(a). We review the district court's decision pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

The Company raises three discrete issues. It claims that the district court incorrectly held that the Company was barred from raising affirmative defenses to the motion for confirmation because the Company failed to move that the court vacate the Committee's award within three months of when it was rendered. The Company further argues that the district court erred in enforcing the Committee's

decision because the decision was ambiguous. Finally, the Company contends that the district court erred in awarding attorney's fees to the Union under Rule 11 of the Federal Rules of Civil Procedure. We find no error in the district court's findings and conclusions; we affirm the grant of summary judgment and the award of attorney's fees in favor of the Union.

### A. *Timeliness of Defense to Arbitration Decision*

The Company raised a number of defenses in response to the Union's request for confirmation of the arbitration decision but dropped all but one on appeal. On appeal it contends that the Committee did not have jurisdiction to render a decision while related NLRB charges were pending. The district court refused to address the Company's contention and held that the Company was barred from challenging the Committee's award because it did not make a timely motion to vacate the award.

Because § 301 of the Labor–Management Relations Act does not identify a statute of limitations to apply when examining the timeliness of a challenge to an arbitration decision, we look to the statute of limitations for a comparable action in the forum state. *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1026 (7th Cir.1980) (*quoting UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966)) ("The timeliness of a Section 301 suit is to be determined, as a matter of federal law, 'by reference to the appropriate state statute of limitations.'"), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). Both parties agree that we must consider Wisconsin law but they part ways on which statute of limitations to apply. The Company argues that we should refer to the one-year statute of limitations for filing a complaint in the district court to confirm an arbitration decision, WIS.STAT. § 788.09, but the Union ar-

---

**2.** In the NLRB charge, the Company had accused the Union of unlawfully accreting casual drivers into the bargaining unit and threatening casual drivers who refused to join the Union with discharge. The NLRB dismissed these charges on November 16, 1987.

gues that we should adopt the statute of limitations for vacating an arbitration award, which in Wisconsin is three months, WIS.STAT. § 788.13.

The Company's position is untenable. We specifically stated in *Jefferson Trucking*, 628 F.2d at 1025, that "a defendant's failure to move to vacate [an] arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award." This holding is intended to enhance the speed and effectiveness of arbitration, to provide fair review of the arbitrator's decision, and to preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award. *Cf. Dreis & Krump Mfg. Co. v. International Ass'n of Machinists*, 802 F.2d 247, 249–50 (7th Cir. 1986). Based on this substantive rule of law, we have repeatedly borrowed the state statute of limitations for the timely filing of motions to vacate arbitration awards when analyzing the timeliness of defenses raised in a confirmation action. *See International Union of Operating Eng'rs v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir.1987); *Plumbers' Pension Fund v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir.1985).

■ The Company insists that the Wisconsin Supreme Court's decision in *Milwaukee Police Ass'n v. City of Milwaukee*, 92 Wis.2d 145, 285 N.W.2d 119 (1979), controls our decision. In *Milwaukee Police* the Wisconsin Supreme Court held that a party to an arbitration decision governed by Wisconsin statutes could respond in an enforcement proceeding with affirmative defenses, even though the three-month statutory time period for filing motions to vacate had expired. Although the Company would like us to adopt this position, we are not bound by a state's interpretation of how to apply its statute of limitations when we borrow to fill a statute of limitations gap in federal law. *See Centor Contrac-*

*tors*, 831 F.2d at 1311 ("As the *Domas* decision itself indicates, the limitations period only is borrowed, as a matter of *federal* law."). "[W]hen it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary." *West v. Conrail*, 481 U.S. 35, 39–40, 107 S.Ct. 1538, 1542, 95 L.Ed.2d 32 (1987). *See Central States, Southeast & Southwest Areas Pension Fund v. Jordan*, 873 F.2d 149, 154 (7th Cir.1989). Section 301 actions are based on federal law. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). We therefore look to the Wisconsin statutes only to identify the most appropriate time period for raising defenses to the arbitrator's decision.[3]

The Company has mischaracterized the Wisconsin Supreme Court's holding in *Milwaukee Police* by suggesting that the Wisconsin Supreme Court stated that the new statute of limitations for raising defenses in confirmation actions would be one year. If the Wisconsin court had explicitly stated as much, we would be facing an entirely different situation—one in which we would have to reexamine this court's prior practice of adopting the statute of limitations applicable to motions to vacate in light of a seemingly more analogous statute of limitations. The Wisconsin Supreme Court, however, in *Milwaukee Police*, simply held that the three-month statute of limitations for motions to vacate did not bar a party from raising similar issues as defenses in a confirmation action. 285 N.W.2d at 128. The Wisconsin court did not create a new statute of limitations; it interpreted an existing one.

■ At best, the *Milwaukee Police* decision suggests to us that the statute of limitations for motions to confirm arbitration awards may be more analogous to the issue before us. Based on our consistent precedent to the contrary, however, we de-

---

3. In light of this consistent and unambiguous precedent in our own court, we decline to follow the district court's decision in *United Bhd. of Carpenters, Local Union No. 1533 v. Hamilton Indus., Inc.*, 623 F.Supp. 611, 612 (E.D.Wis.

1985). Our decisions in *Domas* and *Centor Contractors* were issued after the district court's decision in *Hamilton Industries* and have demonstrated that the district court in that case misconstrued prior case law.

cline to follow that suggestion. As we stated in *Hemmings v. Barian,*

> When a federal court borrows a state statute of limitations for use in connection with a federal statute that does not have its own statute of limitations, the court is not applying state law; it is applying federal law.... Nothing in this analysis suggests that the federal court should feel bound by the details of the borrowed statute of limitations. "Inevitably our resolution of cases or controversies requires us to close interstices in federal law from time to time, but when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary."

822 F.2d 688, 689–90 (7th Cir.1987) (*quoting West v. Conrail,* 481 U.S. 35, 39–40, 107 S.Ct. 1538, 1541–42, 95 L.Ed.2d 32 (1987)). The Wisconsin Supreme Court's decision in *Milwaukee Police* establishes a substantive principle of law with which we may (and do) differ. We therefore find that the Company is barred by a three-month statute of limitations from raising its "jurisdiction" defense.[4]

## B. *District Court Interpretation of the Arbitration Award*

B & M asserts that the arbitration decision was ambiguous and therefore the district court should not have interpreted the decision but returned it to the Committee for clarification. The Union disagrees, pointing out that the decision is clear when read in the context of the arguments made at the grievance proceeding. The district court sided with the Union and held, on cross motions for summary judgment, that the Committee's award was enforceable. We view the facts and reasonable inferences therefrom in the light most favorable to the nonmovant Company. *International Union of Operating Eng'rs, Local Union 965–965A–965B–965C–965RA v. Associated Gen. Contractors,* 845 F.2d 704, 705 (7th Cir.1988).

A district court should not interpret an ambiguous arbitration award. *United Steelworkers v. Danly Mach. Corp.,* 852 F.2d 1024, 1027 (7th Cir.1988). If an award is unclear, the court should send it back to the arbitrator for clarification. *Id.* When possible, however, a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration. *Ethyl Corp. v. United Steelworkers,* 768 F.2d 180, 188 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). The court may consult the record and grievance to determine whether the arbitration award is ambiguous. *See Danly Mach. Corp.,* 852 F.2d at 1027; *Ethyl Corp.,* 768 F.2d at 188; *Teamsters, Local Union No. 330 v. Elgin Eby-Brown Co.,* 670 F.Supp. 1393, 1396 (N.D.Ill.1987).

Although the Committee cannot be accused of expounding at great length in its decision, the award is not ambiguous when read in the context of the grievance and the record. Throughout the proceedings the parties treated the grievance as involving two separate issues—McCaffrey's status and the status of casual drivers. The grievance itself raised two issues: whether the collective bargaining agreement obligated the Company to order casual drivers to join the Union and whether McCaffrey should also be required to join as an independent owner-driver. After the Committee considered the Company's request to delay consideration of the casual drivers issue, it instructed the Company to proceed on both issues. In fact, everyone involved in the proceedings acknowledged that there were two issues before the Committee. It would require a strained reading of the arbitration decision at this point to find that the Committee was not discuss-

---

4. Even on the merits, the Company's argument that the Committee did not have jurisdiction to examine the casual drivers dispute would fail. *See Local 703, Int'l Bhd. of Teamsters v. Kennicott Bros.,* 725 F.2d 1088, 1090–91 (7th Cir.1984) ("the representational nature of the question alone is an insufficient basis upon which to deny arbitration"); *Brotherhood of Teamsters Local No. 70 v. Celotex Corp.,* 708 F.2d 488, 490 n. 3 (9th Cir.1983) (the NLRB and courts share concurrent jurisdiction over cases legitimately involving disputes over breaches of collective bargaining agreements and representational matters).

ing both issues when it reported its decision.

During the arbitration proceedings, the Union requested, with regard to the casual drivers, that the Company comply with the terms of the contract and terminate all employees who refused to become members of the Union within seventy-two hours of notice. The Company responded by arguing that a past practice of excluding casual drivers from the collective bargaining agreement excused the Company from complying with the collective bargaining agreement. In light of that position, the Committee's direction that the Company "comply with the terms of its labor agreement with Local 579 including the Addendum thereto" is clear. The Committee rejected the Company's argument that past practice vitiated the Company's responsibilities under the agreement and ordered the Company to comply with the agreement. The Company was therefore obligated to order casual drivers to join the Union. When read in the context of the grievance and the Company's own arguments at the arbitration proceedings, the award is not ambiguous.

### C. *Rule 11 Sanctions*

█ The district court sanctioned the Company for violations of Rule 11 of the Federal Rules of Civil Procedure, finding

> [t]he [Company's] position has been that of a participant in an athletic event who complains during the game that it should never have been scheduled or played, that a number of its own players are missing, and that it is playing under protest for a variety of other reasons as well, some of which are not raised during the event. After the decision, [the Company] then claims victory and fails to pursue its protest until it is too late under the previously established ground rules in *Centor Contractors.*

The Company argues that the $7,025 award of attorney's fees to the Union was inappropriate because the Company was not forewarned that the district court might impose sanctions. The Company also con-

tends that the district court's findings were "cavalier" and lacking in the specificity required by Rule 11. Furthermore the Company argues that its contentions were not frivolous and that it, in fact, was successful on two significant issues. We review a district court's decision to sanction a party pursuant to Rule 11 under an abuse of discretion standard. *See Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 932–33 (7th Cir.1989).

█ We reject the Company's first assertion that it did not have notice or an opportunity to be heard on the issue of sanctions. The Union requested attorney's fees in its brief in support of its motion for summary judgment, giving the Company fair warning that the district court was under an obligation to impose sanctions if the court found them warranted. The Company could have responded to the request for sanctions but did not. Due process does not require the district court to conduct an additional hearing on the issue of sanctions "when the Rule 11 sanctions are based on counsel's incompetence in handling the matter rather than a finding of bad faith." *Brown v. National Bd. of Medical Examiners,* 800 F.2d 168, 173 (7th Cir.1986). We have even discouraged lower courts from conducting additional proceedings when the record was adequate to determine whether sanctions were necessary. *Indianapolis Colts v. Mayor of Baltimore,* 775 F.2d 177, 183 (7th Cir.1985). The district court sanctioned the Company and its counsel for misstatements of law and fact and did not rely on evidence of the Company's bad faith (although the record indicates that there was some of that too). Because the Company had notice that sanctions were under consideration and Rule 11 does not require an independent hearing if based on the objective record of a party's conduct, we find little merit in the Company's claim that it did not receive fair notice and hearing on the issue of Rule 11 sanctions.

█ Likewise, the district court's findings were sufficiently specific to enlighten the Company and us as to the reasons for the sanctions. We have requested in the past that district courts "state with some

specificity the reasons for the imposition of a sanction, and the manner in which the sanction was computed." *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1438 (7th Cir.1987). We have also admitted that "sometimes the reason for decision is obvious" and necessitates no findings. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir.1987), *cert. dismissed,* — U.S. —, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). Although we do not recommend that courts make it a common practice to speak in metaphor (compelling us some day to overrule a field official after viewing the instant replay in the press box), we understand why the district court imposed sanctions as it did and find on review the comparison to a sporting event adequate. The district court sanctioned the Company for contesting the Committee's authority to hear the grievance, questioning the make-up of the Committee, and raising numerous meritless contentions that were precluded by the statute of limitations. Furthermore the contentious manner in which the Company conducted this litigation makes apparent the district court's reasons for imposing sanctions.

 The district court, in determining whether sanctions are warranted, examines the reasonableness of the party's position under the circumstances. *Magnus Electronics, Inc. v. Masco Corp.*, 871 F.2d 626, 629 (7th Cir.1989). A party risks sanction for failing to make a reasonable inquiry into the factual and legal basis for the asserted claim. *Brown*, 800 F.2d at 171–72. While a court must not sanction a party for a reasonable misconstruction of case law, *see e.g., Magnus Electronics, Inc. v. La Republica Argentina*, 830 F.2d 1396, 1405 (7th Cir.1987), a party is not entitled to deliberately ignore or misstate case law that is unfavorable to its position. *See Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 753 (7th Cir.1988); *Szabo Food Service*, 823 F.2d at 1081. Rule 11 also prohibits a party from rewriting the factual record to reflect what it thinks should have occurred. *In re Central Ice Cream Co.*, 836 F.2d 1068, 1073 (7th Cir.1987).

A few examples serve to illustrate the Company's sanctionable conduct. The Company argued in the district court that the Committee lacked authority to address the grievance because it involved an issue as to whether casual drivers were "accreted" into the Union. This court has specifically stated, however, that a representation dispute does not bar arbitration. *Local 703, Int'l Bhd. of Teamsters v. Kennicott Bros.*, 725 F.2d 1088, 1090–91 (7th Cir. 1984). Furthermore, the collective bargaining agreement clearly indicates that this was not a representation dispute because casual workers were explicitly included in the terms of the agreement. *See* Record at 10 (National Master Freight Agreement, Art. 3, Sect. 1(b)). Likewise the Company made an equally frivolous argument that no collective bargaining agreement existed because there was no meeting of the minds on whether casual drivers were included in the agreement. The Company signed the agreement and, as we noted, the agreement explicitly states that casual drivers are employees under the agreement. Rule 11 requires at a minimum that a party read the document whose terms it is contesting and school itself in principles of law that directly apply to the arguments at hand.

Perhaps most objectionable to us is the Company's practice of misstating the law. In the Company's brief to this court, for example, it states, "This Court has further stressed that a Rule 11 motion requires: 'judges to make findings and give explanations every time a party seeks sanctions under Rule 11,'" citing our decision in *Szabo Food Service*, 823 F.2d at 1084. In fact, *Szabo Food Service* states the following: "We do not now join the Fifth Circuit in requiring judges to make findings and give explanations every time a party seeks sanctions under Rule 11. Sometimes the reason is obvious." *Szabo Food Service*, 823 F.2d at 1084 (citations omitted). It is obvious to us that when counsel engages in this type of deliberate mischaracterization of precedent, sanctions are warranted.

 Contrary to the Company's position, the district court is not precluded from sanctioning a party for frivolous con-

duct, even if some of the party's claims are not frivolous. *See Hays v. Sony Corp. of America,* 847 F.2d 412, 417 (7th Cir.1988); *Hill v. Norfolk & W. R.R. Co.,* 814 F.2d 1192, 1200 (7th Cir.1987). The district court admittedly agreed with the Company that the Union was not entitled to monetary damages and that it did not have jurisdiction to decide the validity of the collective bargaining agreement after March 31, 1988.[5] These two legitimate issues were surrounded by a flood of extraneous arguments that unduly delayed proceedings and wasted the court's time. The court reduced the requested attorney's fees to credit the Company for time directed to these issues. We find the district court did not abuse its discretion by imposing sanctions in the amount of $7,025 against the Company despite these valid issues.

For the reasons stated, we therefore AFFIRM the judgment of the district court.

---

5. The district court ruled that it did not have jurisdiction to determine whether the Company unlawfully repudiated the contract based on this court's decision in *NDK Corp. v. Local 1550 of the United Food and Commercial Workers Int'l Union,* 709 F.2d 491 (7th Cir.1983). We subsequently overruled *NDK Corp.,* holding that under § 301 of the Labor–Management Relations Act a federal district court may consider the validity of a collective bargaining agreement. *International Bhd. of Electrical Workers, Local 481 v. Sign–Craft, Inc.,* 864 F.2d 499, 502 (7th Cir.1988). Neither party raised the issue, however, on appeal and we therefore do not consider the merit of the district court's decision in this regard.