**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, and United Steelworkers of America, Local Union 15271, Plaintiffs–Appellees,**

v.

**DANLY MACHINE CORPORATION, Defendant–Appellant.**

No. 87–2033.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1988.

Decided July 26, 1988.

Kay Ann Hoogland, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellant.

Rudolph Milasich, Asst. Gen. Counsel, Pittsburgh, Pa., for plaintiffs-appellees.

Before WOOD, Jr., FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The United Steelworkers of America, AFL–CIO–CLC and Local Union 15271 (collectively "the union") brought an action in the district court pursuant to 29 U.S.C. § 185 to enforce an arbitration award. The district court granted judgment in the union's favor and enforced an order by the arbitrator awarding the grievant, Carmine DiSandro, sickness and accident benefits ("S & A benefits"). In so ruling, the district court denied Danly Machine Corporation's ("Danly") cross-motion for summary judgment. Danly appeals. We affirm.

Following a strike at the Danly Corporation, Carmine DiSandro, an employee of Danly, sought reinstatement to his former position as a "crib attendant." The job required DiSandro to lift 35 pounds or more on a regular basis, a requirement DiSandro had not been able to meet without an assistant even before the strike.[1] As a result, Danly refused to reinstate DiSandro either as a crib attendant or in any other position, ostensibly because all jobs at Danly involved lifting 35 pounds or more.

DiSandro then requested, but was denied, sickness and accident benefits under Danly's Insurance Plan, incorporated into and made a part of the collective bargaining agreement between the union and Danly.

DiSandro filed a grievance against Danly seeking S & A benefits, or in the alternative, reinstatement. Following the procedures outlined in the collective bargaining agreement for settling labor disputes, the matter was eventually heard by an arbitrator.

At arbitration, Danly argued that DiSandro's back problems made reinstatement impossible and that its employees were not permitted to go from "lay-off"[2] status to

---

1. In late 1982, DiSandro was injured at the plant and began experiencing back pain. He left work and consulted his doctor, who recommended that DiSandro be restricted to a physically less demanding job. Although DiSandro's doctor felt DiSandro's lifting capabilities should be restricted to less than 35 pounds, he issued DiSandro an unrestricted return-to-work slip in April, 1983. DiSandro worked as a crib attendant from April, 1983 until the strike. During that time, DiSandro had an assistant to help lift heavy objects. DiSandro did not seek further treatment from his doctor after he returned to work. After the strike, DiSandro was examined by Danly's doctor who determined that DiSandro could not return to work.

2. Employees on "lay-off" status apparently included those on strike.

"disability" status in order to collect S & A benefits. With respect to the argument concerning benefits, the union pointed out that Danly had instituted a policy permitting employees returning from lay-off status to receive benefits. Danly responded that it had not instituted a practice of permitting employees to go from lay-off status to disability status but had simply made a policy exception for certain employees at the union's request.[3] Danly argued this policy exception had now been rescinded, as evidenced by the denial of several other S & A benefit claims.

The arbitrator found that DiSandro's grievance primarily involved a request for S & A benefits and that his request for reinstatement, though an alternative request, was not the underlying basis for his grievance. The arbitrator ruled that Danly properly refused to return DiSandro to work but then held that although Danly had not instituted a practice of permitting employees on lay-off status to proceed to disability status, it had, by official policy,[4] made an exception for certain employees. The arbitrator also held that although Danly was permitted to unilaterally rescind that policy at any time (since the policy never had been formally incorporated into the collective bargaining agreement), employees had to be notified of the policy's rescission. The arbitrator then found that DiSandro did not have notice that Danly was changing its policy at the time he sought benefits. Therefore, the arbitrator concluded DiSandro was entitled to rely on the existing policy and was entitled to receive benefits.

The arbitrator ordered Danly to pay DiSandro S & A benefits "subject to applicable waiting periods and any other restrictions that would apply if grievant went from active employment status to S & A status on that date." Under the section of the opinion entitled "AWARD," the arbitrator directed Danly *"to pay* grievant S & A benefits in accordance with the above opinion." (emphasis added).

Following receipt of the arbitrator's decision, Danly sent DiSandro an S & A benefit claim form requiring a signature by a treating physician. DiSandro met with Danly personnel a short while later and explained he was unable to complete the form as he was not under a treating physician's care. Danly then denied DiSandro's S & A benefits.

DiSandro's union filed an action in federal court seeking enforcement of the arbitration award. The district court, after considering the parties' cross-motions for summary judgment, ruled that Danly's failure to raise the issue of the claim form requirement at the time of the arbitration proceeding, constituted a waiver of that issue. The court also determined that the arbitrator had unconditionally awarded DiSandro S & A benefits. It therefore granted the union's motion for summary judgment and ordered Danly to pay.

On appeal, Danly argues the district court overstepped its jurisdictional bounds by interpreting an ambiguous award in DiSandro's favor. Danly argues that to find for DiSandro, the district court must have made a factual determination that DiSandro was not required to meet claim form eligibility requirements—a determination left open by the arbitrator's opinion. The union responds that the arbitrator unambiguously *awarded* DiSandro benefits. Thus, Danly cannot now impose an after-the-fact requirement on DiSandro's eligibility for that award.

Danly argues that it is not clear whether the arbitrator unequivocally awarded DiSandro S & A benefits or whether he only found DiSandro *eligible* for those benefits.

---

**3.** Danly apparently agreed to make this policy change, at the union's request, following the union's concern about the benefit rights of employees who though returning from lay-off status were denied their old positions at Danly as a result of physical examinations conducted by Danly.

**4.** Evidence introduced at the arbitration proceeding, indicated that Danly issued a statement which read as follows:

> Due to a recent policy change, sickness/accident benefits and medical coverage will be provided to otherwise qualified employees who are denied work on the basis of company sponsored examinations.

Danly asserts that given the ambiguity in the award, the district court should not have interpreted the award to mean that DiSandro had been awarded benefits. Rather, the award should have been sent back to the arbitrator for further clarification.

■ We begin our analysis with the general proposition that it is inappropriate for a district court to interpret an ambiguous arbitration award. If an award is unclear, it must be sent back to the arbitrator for clarification. The district court is only permitted to interpret and enforce an ambiguous award if the ambiguity can be resolved from the record. *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180 (7th Cir.) *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1985). The court may not interject itself into the arbitration process by elaborating on or rewriting an arbitrator's award.

■ However, the arbitrator's decision in this case was not ambiguous. The arbitrator determined that although DiSandro mentioned reinstatement in his grievance, all DiSandro really sought was S & A benefits. The arbitrator then awarded benefits and *ordered* Danly to pay. Recognizing however, that the amount and number of payments of S & A benefits is typically determined by the parties' collective bargaining agreement, the arbitrator conditioned the amount of payments on the terms found in the insurance plan. The arbitrator did not condition the award itself.

With regard to whether the arbitrator conditioned his award of benefits, Danly makes another argument, closely related to the first. Danly asserts that the arbitration between it and DiSandro was about whether the policy permitting employees to go from lay-off status to disability status should apply to DiSandro. Danly asserts that the arbitrator concluded *only* that the policy permitting employees to do so should be applied to DiSandro. Thus, it follows that DiSandro was required to meet all those conditions any other employee, going from lay-off to disability status, was required to meet. When DiSandro failed to fulfill those conditions by failing to obtain a treating physician's signature, Danly argues it was not obligated to pay S & A benefits.

The union responds that DiSandro's grievance unequivocally was about whether DiSandro was entitled to S & A benefits. Thus, when the arbitrator awarded benefits, the award was not conditioned on any other requirements other than those normally controlling the length and amount of payments. That is, the award of benefits was unconditional while the amount of benefits was subject to the terms of the insurance plan. Thus, Danly had no right to condition DiSandro's eligibility for benefits on the signature of a treating physician.

We agree with the union. In his decision and opinion, the arbitrator stated:

... there was some apparent confusion about the issues in this case. Grievant's only request for a remedy in his complaint dated 7/6/85 is a request for S & A benefits ... [I]n addition to complaining about the Company's denial of S & A benefits, he does have a single sentence complaining about the Company's refusal to put him back to work. However, he requests no remedy for that refusal other than the S & A benefits.

Clearly, the primary issue at the time of arbitration was whether DiSandro was *entitled* to S & A benefits.[5] It was incumbent upon Danly to raise all arguments with regard to that issue at the arbitration proceeding. If Danly felt DiSandro was not entitled to benefits because he was unable to meet certain claim form requirements, it had the opportunity to raise that issue at the arbitration proceeding.

Danly argues that it could not know whether DiSandro would be able to meet procedural requirements for obtaining benefits until after the arbitrator announced his decision to award benefits. But, as the

---

5. In his order, the arbitrator did initially rule that Danly's refusal to reinstate DiSandro, because of his back problems, was justified, although there was some conflicting evidence regarding DiSandro's health.

union pointed out, during oral argument before this court, Danly was aware that DiSandro had not been under a physician's care for some time. Thus, Danly could have anticipated some problem with the benefit claim form requirements. Rather than raising the problem at arbitration, the union argues Danly chose to keep silent at arbitration, hoping perhaps to "sandbag" DiSandro after the fact.

We take a dim view of this tactic. As we said in *Chicago Newspaper Guild v. Field Enterprises, Inc.,* 747 F.2d 1153, 1157 (7th Cir.1984), "[t]he long-established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use the information as a defense to compliance with an adverse award." Danly's argument that it could not have known there would be a problem with the claim form until after arbitration was completed is not persuasive. Evidence, introduced at the arbitration proceeding, indicated that DiSandro had not been under a doctor's care for more than a year, and in fact, had been working before the strike. Thus, Danly could have anticipated that problems would arise when DiSandro was asked to fill out a claim form. The fact that Danly did not encounter a problem with the claim form until after arbitration is irrelevant to the question of whether it had information, relating to a potential problem, available at the time of arbitration. *See Teamsters, Chauffers, Salesdrivers & Helpers Local Union No. 330 v. Elgin Eby–Brown Co.,* 670 F.Supp. 1393, 1395 n. 5 (N.D.Ill.1987).

> To allow [the employer], after arbitration, to have the court supplement the record with information that was available at the time of arbitration, would ... undermine the very purpose of private arbitration.

*Mogge v. District 8, Int'l Ass'n of Machinists,* 454 F.2d 510, 513 (7th Cir.1971).

■ Moreover, even if there is some question about whether the arbitrator's award was conditional, we believe that question can be resolved from the record. If, as Danly contends, DiSandro's award

was subject to certain conditions, the condition upon which Danly relies, does not appear to apply to DiSandro in any event. Article II, section (c) of the Insurance Plan, upon which Danly relies for the proposition that S & A benefits are contingent on treatment by a doctor, states:

> (c) ... benefits for disability *due to sickness* are payable only if the employee is under the care of a legally licensed physician.... (emphasis added).

The Insurance Plan plainly states that only payment of sickness benefits is contingent on a doctor's care. Disability benefits are not subject to this requirement. DiSandro's back problems and the resulting lifting restriction is more likely a disability, not a sickness. Thus, it does not appear Danly's argument has much force even if we were to find an ambiguity existed.

On appeal, the union asks us to award it double fees pursuant to Fed.R.App.P. 38. The union contends Danly's appeal was frivolous and simply a "last ditch" effort to avoid paying benefits.

■ We agree with the union that this appeal was probably unnecessary and that Danly has needlessly wasted valuable resources in fighting the payment of benefits to DiSandro. Danly's appeal turns the proverbial molehill into a mountain. Yet we do not feel the imposition of sanctions, under Fed.R.App.P. 38, is warranted in this instance. Danly's argument that a district court may not interpret an ambiguous arbitration award, though ultimately inapplicable in this case, had credence.

The decision by the district court to enforce the arbitrator's award is AFFIRMED and the union's motion for double fees pursuant to Fed.R.App.P. 38 is DENIED.