**UNITED FOOD & COMMERCIAL WORKERS LOCAL 100A, AFL–CIO & CLC, Plaintiff–Appellant,**

v.

**JOHN HOFMEISTER AND SON, INCORPORATED, an Illinois corporation, Defendant–Appellee.**

No. 91–1049.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1991.

Decided Dec. 26, 1991.

As Corrected Dec. 27, 1991.

Herbert V. Adams, Chicago, Ill. (argued), for plaintiff-appellant.

Carol B. Manzoni (argued), Carol L. O'Brien, Ross & Hardies, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and WISDOM, Senior Circuit Judge.[1]

BAUER, Chief Judge.

This case arises from disputes between Local 100A of the United Food & Commercial Workers International Union ("the Union") and John Hofmeister and Son, Inc. ("Hofmeister"), a Chicago meat packing company. The Union filed a two count complaint under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185–187 (1988). In the first count, the Union sought to enforce an arbitration award benefitting Luis Hernandez, a wrongfully discharged Hofmeister employee. In the second count, the Union sought to compel Hofmeister to arbitrate Arturo Chavez' (another employee) grievance.

The district court granted Hofmeister's motion for summary judgment on both counts, and the Union appealed. We reverse the district court as to count one, and remand the case to the arbitrator for further proceedings. We affirm the district court's holding on count two. Because counts one and two concern two completely independent disputes, we shall deal with each separately.

## I.

Luis Hernandez worked as a meat shoveler for Hofmeister. In this capacity he was required to move about 18,000 pounds of meat per day, 50 to 100 pounds at a time. On June 1, 1988, Hernandez injured his back while shoveling meat. He was unable to return to work for several months after his injury. Hernandez was certified by his doctor as being sufficiently recovered to return to work on December

1. The Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

5, 1988. When he returned to work on December 11, 1988, his supervisor informed him that he had been terminated for failing to follow company rules and regulations for reporting work injuries. During the first two months following Hernandez' injury, Hofmeister paid him health, welfare, and pension benefits, as required by the collective bargaining agreement. Yet the company fired him on September 4, 1988, "for failing to report in to the Company to explain his subsequent three month absence from work." Appellee's Br. at 6. In other words, the company paid Hernandez health benefits during July and August of 1988 on account of his injury, but fired him on September 4, 1988, for failing to explain his absence from work.

The Union filed a grievance on Hernandez' behalf, and the matter was presented to an arbitrator on November 6, 1989 pursuant to the terms of the collective bargaining agreement. The arbitrator "carefully reviewed and studied all of the testimonial and documentary evidence submitted" and found that Hofmeister violated the collective bargaining agreement by firing Hernandez without just and sufficient cause. Decision of Arbitrator at 7, 11, Appellee's Supp.App., Ex. 6. The arbitrator found that the Company knew Hernandez was absent because of his back injury and it received valid medical evidence regarding the injury. The arbitrator also found that Hernandez had complied with Hofmeister's reporting procedures.

Based on these findings the arbitrator held on January 3, 1990, that "[t]he grievant must be reinstated and made whole." The dispute in count one centers on the meaning of this award. Hofmeister reinstated Hernandez in February 1990. After a few days, Hernandez had difficulty performing his duties. It is not clear whether he then resigned or was discharged. Hofmeister refused to pay Hernandez any back pay for the period between his dismissal on September 4, 1988 and his reinstatement in February 1990. Hofmeister contends that Hernandez is not entitled to the back pay under the "make whole" award because, even if he had not been terminated wrongfully, Hernandez would have been unable to perform his duties. Because it paid him all the health benefits due him under the contract during July and August of 1988, Hofmeister contends that it has complied fully with the arbitrator's award. Thus, its position is that its wrongful discharge of Hernandez is basically irrelevant, and any back pay award would be a windfall to Hernandez.

It does not appear that Hofmeister raised any of these arguments before the arbitrator. In fact, the only evidence bearing upon Hernandez' condition during the period between discharge and reinstatement that the arbitrator considered was the medical disability certificate prepared by a Dr. Byla. This certificate indicated that Hernandez could return "to regular work duties" on May 30, 1989, if he wore "lumbo-sacral support." Disability Certificate, Appellant's Appendix C.

The Union filed suit in district court, contending that Hernandez, regardless of his condition in February 1990, was entitled to $13,074.40 in lost wages and vacation pay, health, welfare, and pension benefits under the arbitration award. Complaint at 4. It is unclear from the record, however, what period of time this claim for wages covers. In some of its pleadings and on appeal, the Union appears to contend that based upon a doctor's certificate, Hernandez was fit to return to his regular duties on May 30, 1989. Therefore he is entitled to pay and benefits from that date until his reinstatement in February 1990. The Union's position is basically that without some back pay award, the arbitrator's award would be a nullity.

After the Union filed suit, Hofmeister took discovery on Hernandez' injury. On its motion for summary judgment, it submitted evidence it contended established that Hernandez could not have performed his duties at any time after his injury. This evidence included Hernandez' deposition testimony that he could no longer work as a meat shoveler.

In deciding the summary judgment motion, the district court refused to consider the Disability Certificate prepared by Dr.

Byla. The certificate was not accompanied by an authenticating affidavit, so the district court concluded that it was inadmissible. The court similarly refused to admit other medical documents the Union submitted because it believed they were unauthenticated, and even if properly authenticated, they were illegible and therefore inadmissible on that basis. Hofmeister's evidence, which the court found was properly authenticated, therefore stood unrebutted. Consequently, the district court entered summary judgment in Hofmeister's favor. Based upon our decision, we find it unnecessary to determine the propriety of the district court's evidentiary rulings.

## II.

We review the district court's grant of summary judgment *de novo* to decide whether the record as a whole establishes that Hofmeister was entitled to judgment as a matter of law. *See, e.g., Santella v. Chicago,* 936 F.2d 328, 331 (7th Cir.1991); *First Wisconsin Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990). Moreover, judicial review of an arbitration award is extremely limited. *E.I. Du Pont de Nemours & Co. v. Grasselli Employees Indep. Ass'n,* 790 F.2d 611, 614 (7th Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986).

> This low standard of review is essential to prevent a 'judicialization' of the arbitration process. Arbitration is an alternative to the judicial resolution of disputes, and an extremely low standard of review is necessary to prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true alternative.

*Id.* (citations omitted).

■ The issue in count one is whether Hofmeister has complied with the arbitrator's award requiring that Hernandez be reinstated and made whole. Hofmeister contends that it complied with the award based on its assumption that the award only required that Hernandez be reinstated to the position he would have been in had there been no wrongful discharge. This contention is remarkably similar to the employer's position in *Chicago Newspaper Guild v. Field Enterprises, Inc.,* 747 F.2d 1153 (7th Cir.1984).

In *Chicago Newspaper,* the Union filed a grievance on behalf of a discharged employee. After holding hearings, an arbitrator ordered the employee reinstated and paid back pay. *Id.* at 1155. After the employee was discharged, but while the arbitration proceeding was pending, the employer laid off 550 employees. Neither party informed the arbitrator of the layoffs. After the award issued, the employer sent the employee a letter stating that he had been reinstated as of February 1, 1977 (the day after his discharge) and laid off as of March 7, 1978 (the date of the other layoffs). Thus, the employer contended, had the employee been on the active payroll, he would have been laid off. The employer paid the employee back pay and vacation benefits only for the period between the retroactive reinstatement and layoff. *Id.* The union sued the employer to enforce the arbitration award, alleging that the employer's actions failed to comply with the award. The union argued that the employer was required to return the employee to the active payroll, and to provide back pay for the entire period between the discharge and reinstatement.

This court refused to accept the employer's argument and affirmed the district court's grant of summary judgment in favor of the union. We stated:

> [E]ven if [the employer] were able to prove that [the employee] would have been laid off in March 1978, we would not accept such an argument in this enforcement proceeding because it was not presented to the arbitrator below. The long-established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use the information as a defense to compliance with an adverse award.

*Id.* at 1157, *citing Mogge v. International Ass'n of Machinists,* 454 F.2d 510 (7th Cir.1971). Case law in this and other circuits is clear on this issue. "Failure to

present the issue and evidence below [before the arbitrator] waives the issue in an enforcement proceeding." *Teamsters, Chauffeurs, etc., Local Union No. 330 v. Elgin Eby–Brown Co.,* 670 F.Supp. 1393, 1398 (N.D.Ill.1987) (collecting cases).

We reached a similar result in *Mogge v. International Association of Machinists,* 454 F.2d 510 (7th Cir.1971). In *Mogge,* an employer claimed that it was not bound by an arbitration award because the collective bargaining agreement had expired. But the employer's only evidence concerning the expiration of the contract was presented to the district court in an enforcement proceeding. *Id.* at 512. The issue was never presented to the arbitrator, nor was there any showing that evidence of the expiration of the contract was unavailable during the arbitration proceeding. We held that, because the burden was on the employer to prove to the arbitrator that the contract had expired so that he could consider it in fashioning a remedy, the employer could not claim during the enforcement proceeding that the award was unjustified. *Id.* at 513. We refused to permit the employer to supplement the record after the arbitration proceeding was over. "To allow [the employer], after arbitration, to have the court supplement the record with information that was available at the time of arbitration would further undermine the very purpose of private arbitration." *Id.* As we explained in *Chicago Newspaper:*

> An arbitrator's need to be informed of all pertinent information is no less crucial when formulating a remedy for an unlawful discharge as when substantively deciding whether an unlawful discharge occurred.... Thus, the arbitrator below should have been apprised of any available information bearing on the appropriate remedy to be devised in this case in the event he found that [the employee] was unlawfully discharged.... To preserve the efficiency and integrity of the arbitral process, therefore, [the employer] is precluded from arguing in this enforcement proceeding that [the employee's] reinstatement is for any reason unfair or unjustified when [it] failed to

present any such arguments to the arbitrator below.

*Chicago Newspaper,* 747 F.2d at 1158.

Sandbagging employees with new defenses in enforcement proceedings seems to be a popular strategy among employers. In *United Steelworkers of America v. Danly Machine Corp.,* 852 F.2d 1024 (7th Cir.1988), an arbitrator determined that the employer wrongfully denied an employee's claim for sickness and accident ("S & A") benefits. It ordered the employer to pay the benefits. After the award was issued, the employer sent the employee a claim form requiring the signature of a treating physician. The employee informed the company that he was unable to complete the form because he was not under the care of a treating physician. For this reason, the company denied the S & A benefits. *Id.* at 1026. The union sued the employer to force it to pay the benefits. The district court granted the union's motion for summary judgment and ordered the employer to pay. On appeal, this court stated that, because it was clear that the primary issue before the arbitrator was whether the employee was entitled to benefits,

> it was incumbent upon [the employer] to raise all arguments with regard to that issue at the arbitration proceeding. If [the employer] felt [the employee] was not entitled to benefits because he was unable to meet certain claim form requirements, it had the opportunity to raise that issue at the arbitration proceeding.

*Id.* at 1027.

Thus, it seems clear that the parties to an arbitration proceeding must provide the arbitrator with enough information so that he may not only reach an informed decision, but also craft a reasonable remedy. If parties were allowed to withhold information during arbitration, and then use it to sandbag their opponents during enforcement proceedings, much of the efficiency and usefulness of arbitration would be lost. *See Danly Machine,* 852 F.2d at 1028. Of course, parties cannot be expected to anticipate every possible defense or datum that

might influence an arbitrator's award. In this case, however, as in *Danly Machine,* this concern need not detain us. Reinstatement and back pay awards are common remedies in wrongful discharge cases. Evidence of Hernandez' medical condition was submitted to and considered by the arbitrator. *See* Decision of Arbitrator at 3–4, Appellant's Br., App. B. If Hofmeister was concerned about the propriety of a back pay award given Hernandez' condition, it had ample opportunity to make its case to the arbitrator. The evidence it presented to the district court was available during the arbitration proceeding had Hofmeister troubled itself to collect it. It is not unreasonable in this case to require Hofmeister, as we have required parties in other cases, *see Danly Machine,* 852 F.2d at 1024; *Chicago Newspaper,* 747 F.2d at 1153; and *Mogge,* 454 F.2d at 510, "to anticipate[ ] that problems would arise" regarding a back pay award. *Danly Machine,* 852 F.2d at 1028. Permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would "undermine the purpose of arbitration." *Mogge,* 454 F.2d at 513.

■ Our determination that Hofmeister has waived its defense to the back pay award does not dispose of count one, however. A district court should not interpret an ambiguous arbitration award. *Teamsters Local No. 579 v. B & M Transit, Inc.,* 882 F.2d 274, 278 (7th Cir.1989). Unclear awards must be remanded to the arbitrator for clarification. *Ethyl Corp. v. United Steelworkers of Am.,* 768 F.2d 180 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). Interpretation and enforcement of an ambiguous award is appropriate only if the ambiguity can be resolved from the record. *Id.*

■ In this case, the award is ambiguous and the record fails to resolve the ambiguity. Neither the complaint, nor the

pleadings or briefs provide a consistent basis for the back pay which the Union claims is due under the arbitrator's make whole award. Indeed, in this context, with the apparently conflicting medical evidence before the arbitrator, it is unclear what "make whole" means.[2] Did the arbitrator intend that Hernandez receive back pay and benefits from the date of his termination (9/4/1988) until his reinstatement, from the date he reported back to work for light duty and was informed of his dismissal (12/11/88) until his reinstatement, or from the date he was allegedly able to return to regular duty (5/30/89) until his reinstatement? We cannot determine what the arbitrator found was necessary to make Hernandez whole. Although we assume he believed back pay and other benefits should be paid to Hernandez to make him whole, from this record we have no means of determining what these might be, or even if in fact this is what the arbitrator intended. For these reasons, we reverse the district court's grant of summary judgment on count one, and remand the case to the arbitrator for clarification of the award.

## III.

■ In the second count, the Union seeks to compel Hofmeister to arbitrate the grievance of another employee, Arturo Chavez. As in count one, the Union's claim arises under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988). The Union claims that Chavez was discharged without cause, and sued Hofmeister to compel it to arbitrate Chavez' grievance. Hofmeister does not respond to the merits of Chavez' grievance. In its motion for summary judgment, Hofmeister contended that because it refused to arbitrate on September 15, 1989, and the Union did not file this action until April 17, 1990, the Union's claim is untimely. Hofmeister as-

---

**2.** In its briefs, Appellee makes much of the inadequacies of Dr. Byla's Disability Certificate. This is the same certificate that the district court refused to admit into evidence because it was unaccompanied by an affidavit, and therefore it believed, inadmissible. Regardless of the merits of this position, the certificate is dated 5/23/

89, and states that Hernandez was under Dr. Byla's care from 5/23/89 "to present" and was totally incapacitated during that time. The certificate also states, however, that Hernandez would be ready to return to regular work duties on 5/30/89. Appellee's Br. at 17, Appellant's Brief at Appendix C.

serted that the court should borrow the six month statute of limitations from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1988). The Union contended that the Illinois limitation period for breach of contract should apply. Illinois Revised Statute ch. 110, § 13–205 provides a five-year period for breach of oral contracts, and § 13–206 provides a ten-year period for written contracts. The district court held that the six-month NLRA limitations period was proper, and granted Hofmeister's motion for summary judgment.

The Labor Management Relations Act does not contain a statute of limitations. The issue is, therefore, what is the appropriate statute of limitations for a § 301 action that seeks to compel an employer to arbitrate under a collective bargaining agreement? This is an issue of first impression in this circuit.

 "When a federal statute is silent on the proper limitations period, federal courts determine the timeliness of a suit by reference to an appropriate statute of limitations, the best choice being the most closely analogous time limitation under state law." *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985); *Johnson v. Graphic Communications Int'l Union*, 930 F.2d 1178, 1179 (7th Cir.), *cert. denied sub nom, Padget v. Graphic Communications Int'l Union*, — U.S. ——, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991). Nevertheless, "state statutes of limitations can sometimes be 'unsatisfactory vehicles for the enforcement of federal law.'" *International Union of Elevator Constructors v. Home Elevator Co.*, 798 F.2d 222, 225 (7th Cir.1986) (quoting *DelCostello v. Teamsters*, 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983)). Federal courts must ensure that the importation of state law will not frustrate or interfere with the implementation of federal policy. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454–55, 53 L.Ed.2d 402 (1977). To determine whether we should depart from the general practice of borrowing a limitations period from state law, requires a two-step analysis: (1) we determine whether there is a closely analogous state cause of action, and (2) we examine whether federal labor policy or the practicalities of federal litigation make the federal limitations period significantly more appropriate. *See, e.g., DelCostello v. Teamsters*, 462 U.S. at 158–59, 103 S.Ct. at 2287–88; *Johnson v. Graphic Communications*, 930 F.2d at 1181; *Home Elevator*, 798 F.2d at 226; *Plumbers' Pension Fund v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266, 1268–69 (7th Cir.1985).

In *DelCostello*, the Supreme Court determined that the appropriate statute of limitations is six months in "hybrid" § 301 actions, where the employee alleges that the employer violated § 301 of the Act by breaching the collective-bargaining agreement, and that the union breached its duty of fair representation. *DelCostello*, 462 U.S. at 151, 103 S.Ct. at 2281. The Court borrowed the six-month period from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1988) ("NLRA"). It determined that the NLRA statute of limitations is more analogous to the hybrid action, because it was designed to accommodate the interests at stake in such suits. It balances both the "national interest in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unfair settlement under the collective bargaining system." *Id.* at 171, 103 S.Ct. at 2294.

We applied the *DelCostello* analysis in *Johnson*, 930 F.2d at 1181, and concluded that the six-month period should apply to a "pure" § 301 action by an employee against a union for unfair representation. This does not resolve the question before us, however, since we must heed the Supreme Court's admonition in *DelCostello*, that its holding "should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere." 462 U.S. at 171, 103 S.Ct. at 2294.

Other circuits considering what limitation period is appropriate in § 301 actions to compel arbitration have applied the six-month statute of limitations from § 10(b)

of the NLRA. *See Communications Workers of Am. v. Western Elec. Co.*, 860 F.2d 1137 (1st Cir.1988); *General Teamsters Union Local No. 174 v. Trick & Murray, Inc.*, 828 F.2d 1418 (9th Cir.1987); *Associated Brick Mason Contractors, Inc. v. Harrington*, 820 F.2d 31 (2d Cir.1987); *McCreedy v. Local Union No. 971*, 809 F.2d 1232, *reh'g denied*, 818 F.2d 6 (6th Cir.1987); *International Ass'n of Machinists & Aerospace Workers, Local Lodge No. 1688 v. Allied Prods. Corp.*, 786 F.2d 1561 (11th Cir.1986); *Teamsters Union Local 315 v. Great W. Chem. Co.*, 781 F.2d 764 (9th Cir.1986); and *Federation of Westinghouse Indep. Salaried Unions v. Westinghouse Elec. Corp.*, 736 F.2d 896 (3d Cir.1984). In fact, the only cases we have found wherein a court applied a state statute of limitations (from breach of contract actions) were decided by district courts within this circuit. *See Ozite Corp. v. Upholsterers Int'l Union*, 671 F.Supp. 565 (N.D.Ill.1987); *Chicago Web Printing Pressmen's Union No. 7 v. Chicago Tribune*, 657 F.Supp. 351 (N.D.Ill.1987); and *Merk v. Jewel Food Stores*, 641 F.Supp. 1024, 1032–37 (N.D.Ill.1986). The district courts in this circuit are not in agreement, however. At least two have applied the six-month period. *See United Steelworkers v. Fermet Reclamation, Ltd.*, 627 F.Supp. 1213 (N.D.Ill.1986); *United Food & Commercial Workers Int'l Union, AFL–CIO v. Cudahy Co.*, No. 84 C 1377, slip op., 1985 WL 6041 (N.D.Ill. March 27, 1985). The district court below cited *Fermet* in support of its decision. *United Food & Commercial Workers Int'l Union, Local 100A v. John Hofmeister & Son, Inc.*, 1990 WL 207376, at *3, 1990 U.S.Dist.LEXIS 16681, at *6 (1990).

Although this court has never decided the issue, we have made passing reference to the question in two cases, *Niro v. Fearn*

*International, Inc.*, 827 F.2d 173, 177 (7th Cir.1987) and *International Union of Elevator Constructors v. Home Elevator Co., Inc.*, 798 F.2d 222, 228–229, nn. 5–7 (7th Cir.1986). In *Niro*, we did not need to reach the issue because the suit was filed only a week after the refusal to arbitrate. *Niro*, 827 F.2d at 177. We did catalog the cases holding that the six-month period is the correct one, as well as those importing state breach-of-contract periods, but we did not express a preference for either position. *Id.* In *Home Elevator*, we considered the appropriate limitations period in a § 301 action where the union claimed that the employer had not paid employees the correct wage rate. 798 F.2d at 224. We applied the two-year Indiana limitations period covering employment disputes not based upon a written contract. *Id.* at 230. We noted, however, our concern about the "broad brush approach" taken by the third circuit in *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.*, 736 F.2d 896 (3d Cir.1984), where it applied the six-month period to all suits to compel arbitration under § 301. *Home Elevator*, 798 F.2d at 228 n. 6. We also indicated that we had difficulty with the reasoning in this and other decisions on the issue. *Id.* at n. 7.

But, as we noted above, the issue has never been squarely presented to this court. Having considered the issue, as well as the briefs before the court, we now determine that the six-month limitations period is appropriate in suits to compel arbitration under a collective bargaining agreement. This is particularly true when an employee grievance claiming wrongful discharge is at the root of the dispute. The most closely analogous state law limitations period would be the Illinois breach-of-contract period.[3]

---

3. If we were to apply a state limitations period, it would be the five-year period, because "Illinois courts follow the doctrine that a contract is not in writing unless the parties to it can be ascertained from the document itself. Since employees are not named in the collective bargaining agreement, parol evidence is needed to show they are beneficiaries of it. Illinois law, therefore, defines the contract as oral...." *Chi-*

*cago Web*, 657 F.Supp. at 357 (citing *Pratl v. Hawthorne–Mellody Farms Dairy, Inc.*, 53 Ill. App.3d 344, 347, 11 Ill.Dec. 216, 219, 368 N.E.2d 767, 770 (1st Dist.1977)). We agree with the district court in *Chicago Web*, that although a federal court is not bound to apply state statutes of limitation in the way that the state would apply it, this reasoning is persuasive. *See Chicago Web*, 657 F.Supp. at 357.

But because it involves a motion to compel arbitration in a wrongful discharge case, this case is irrevocably tied to federal labor policy, and the second prong of our analysis controls our decision. We believe federal labor policy and the practicalities of federal litigation make the federal limitations period significantly more appropriate than the state period. In many states, the applicable limitations period for ordinary breach of contract actions range from five to ten years. This is the case in Illinois, as we noted above. This is "simply too long to allow industrial disputes to fester." *Associated Brick Mason Contractors v. Harrington,* 820 F.2d 31, 37 (2d Cir.1987). There is a strong policy favoring settlement of labor disputes by private arbitration. *See, e.g.,* 29 U.S.C. § 173. As the Supreme Court explained in *DelCostello,* federal labor policy relies heavily upon "grievance, arbitration, and the 'law of the shop,'" 462 U.S. at 169, 103 S.Ct. at 2293, and much of its effectiveness could be lost if agreements could be questioned much later. *Id. See also Associated Brick,* 820 F.2d at 37. The six-month limitation period will encourage prompt resolution of labor disputes. Further, because this refusal to arbitrate involves a termination without cause, which is an unfair labor practice under the NLRA, it seems particularly appropriate to borrow the NLRA limitations period.

We are also persuaded by the multiplicity of cases litigating this issue, even within this circuit, that there is a pressing need for a uniform rule to avoid this expensive "judicialization" of the arbitral process. Indeed, as the Court noted in *DelCostello,* national uniformity is particularly important when "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it" are implicated. 462 U.S. at 162–63, 103 S.Ct. at 2289–90. Our holding also eliminates any potential inequity between parties subject to varying state statutes of limitation for the same kind of claim. We therefore hold that the district court properly applied the six-month statute of limitations and dismissed the second count of the Union's complaint against Hofmeister.

## IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.