**NATIONAL WRECKING COMPANY, an Illinois corporation, Plaintiff– Counter Defendant–Appellant,**

**and**

**Douglas R. Stevens, Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 731, Defendant– Counter Plaintiff–Appellee.**

Nos. 92–2170, 92–2392.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1992.

Decided April 7, 1993.

Rehearing and Rehearing En Banc Denied May 5, 1993.

Richard G. Schultz, Douglas R. Stevens (argued), Foran & Schultz, Chicago, IL, for

National Wrecking Co., plaintiff-appellant, and Douglas R. Stevens, appellant.

Robert E. Bloch (argued), Dowd & Bloch, Chicago, IL, for International Broth. of Teamsters, Local 731, defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and GRANT, Senior District Judge.*

BAUER, Chief Judge.

National Wrecking Company ("National") brought suit against the International Brotherhood of Teamsters, Local 731 ("Union") pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, challenging the validity of an arbitration award. The Union counterclaimed seeking enforcement of the arbitration award. The district court granted the Union's motion for summary judgment and enforced the award. 790 F.Supp. 785. The district court also sanctioned National and its counsel and remanded the case to the arbitrator for implementation of the award. For the following reasons, we affirm in part and reverse in part.

## I.

This case arises out of a labor dispute involving vision, specifically that of Joseph Barnett, a Union truck driver and former National employee. National and the Union were parties to a collective bargaining agreement ("CBA") that required them to follow certain grievance and arbitration procedures whenever disputes occurred. National was also subject to certain Department of Transportation ("DOT") regulations which, among other things, mandated that truck drivers satisfy certain vision requirements. Specifically, the DOT regulations require that Barnett's vision be correctable to 20/40 vision in each eye.[1]

On March 8, 1990, National fired Barnett when an ophthalmologist reported that his vision fell short of the DOT requirements. Barnett challenged his dismissal by filing a grievance with the Union. Eventually, pursuant to the CBA, Barnett filed for arbitration. Barnett underwent four eye exams before the arbitration. Two of those exams indicated that Barnett's vision fell below the DOT requirements, while the other two concluded that Barnett's eyesight satisfied the DOT requirements.

On January 30, 1991, the arbitrator issued an opinion in which he concluded that he was unable to resolve the question of Barnett's eyesight because of the conflicting evidence. The arbitrator therefore ordered Barnett to undergo another examination. The test was to be performed by a neutral ophthalmologist, who was to submit a "binding opinion" about Barnett's qualifications for reinstatement. Arbitrator's Award at 28, Exhibit 1 to National's Memorandum in Opposition to Motion for Sanctions and Award of Attorneys' Fees, Record Document 39 ("R. Doc. 39"). The arbitrator's opinion also stated that the ophthalmologist was to "issue a final determination on the point in question." *Id.* The parties were directed to select the ophthalmologist. If they could not agree, the arbitrator himself would select one. After National and the Union failed to agree on an ophthalmologist, the arbitrator appointed Dr. Robert Levine to examine Barnett. Levine tested Barnett and concluded that, although Barnett's right eye was correctable to 20/20 vision, his left eye "does not see every letter in the 20/40 line though his vision ... was better than 20/50." Exhibit 4 to R.Doc. 39. After written and oral communication between the arbitrator and Levine, Levine rendered his final written opinion, dated June 27, 1991, that "[b]ased upon this ophthalmic examination and my review of the United States Department of Transportation vision

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. The relevant DOT regulation states in pertinent part:

(b) A person is physically qualified to drive a motor vehicle if that person—

(10) Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses....

29 C.F.R. § 391.41(b)(10).

requirements for truck drivers, I have concluded that Mr. Barnett is visually qualified to perform his truck driving duties." Exhibit 6 to R.Doc. 39. In July of 1991, the arbitrator therefore ordered Barnett reinstated.

National refused to reinstate Barnett and filed this lawsuit challenging the arbitrator's award. The district court granted the Union's motion for summary judgment and enforced the award. The district court also sanctioned National and remanded the case to the arbitrator for implementation. National appeals.

## II.

### A. Standard of Review

■ We review a district court's decision to grant summary judgment *de novo* and accept all facts and inferences in the light most favorable to the non-moving party. *Vukadinovich v. Board of Sch. Trustees*, 978 F.2d 403, 408 (7th Cir.1992). We will affirm a district court's decision to grant summary judgment " 'where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)).

■ Our review of an arbitrator's award which arises out of a collective bargaining agreement is extremely limited. *Local 100A v. John Hofmeister and Son, Inc.*, 950 F.2d 1340, 1343 (7th Cir.1991). Judicial review of arbitration awards is narrow because arbitration is intended to be the final resolution of disputes. Arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party. Rather, reviewing courts ask only if the arbitrator's award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80

S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). We will uphold an arbitration award so long as the arbitrator's interpretation can in some rational manner be derived from the collective bargaining agreement. *Walters Sheet Metal Corp. v. Sheet Metal Workers Local No. 18*, 910 F.2d 1565, 1566 (7th Cir.1990). We will not set aside an arbitrator's award for factual or legal errors, as long as the award contains the honest decision of the arbitrator after a full and fair hearing of the parties. *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 183 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). Our standard of review is the same whether the award arises under Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185 ("Section 301"), as the district court concluded, or under the Federal Arbitration Act, 9 U.S.C. § 10, as National asserts. *Ethyl Corp.*, 768 F.2d at 184.[2] Our decision in this case is therefore not affected by which of these two statutes applies.

### B. Delegation of the Arbitrator's Decision-making Authority

■ National argues that the arbitration award is invalid because the arbitrator delegated his decision-making authority to the ophthalmologist to decide whether Barnett's vision was satisfactory. The district court held, and we agree, that National has waived this argument because it failed to present it to the arbitrator.

■ Failure to present an issue before an arbitrator waives the issue in an enforcement proceeding. *John Hofmeister*, 950 F.2d at 1343–44; *Automobile Mechanics Local 701 v. Joe Mitchell Buick*, 930 F.2d 576, 578 (7th Cir.1991). Parties, such as National, cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. We will not tolerate such sandbagging. *John Hofmeister*, 950 F.2d at 1344. "Permitting parties

---

**2.** Section 301 governs "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations." 29 U.S.C. § 185(a). The Federal Arbitration Act lists a variety of situations where a federal district court may vacate an arbitration award. 9 U.S.C. § 10.

to keep silent during arbitration and raise arguments in enforcement proceedings would 'undermine the purpose of arbitration'" which is to provide a fast and inexpensive method for the resolution of labor disputes. *Id.* at 1345 (citation omitted). *See also Chicago Newspaper Guild v. Field Enterprises, Inc.*, 747 F.2d 1153, 1157 (7th Cir.1984) ("The long-established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use the information as a defense to compliance with an adverse award.")

National had ample opportunity to object to the arbitrator's use of and reliance on Dr. Levine's opinion. The arbitrator's January 30, 1991 opinion indicated that Levine would submit a binding opinion which would finally determine whether Barnett's eyesight satisfied the DOT regulations. National participated willingly with the arbitrator's decision to rely on Levine. Further, National could have objected to the arbitrator's reliance on Levine at any time between January 30, 1991, when the arbitrator rendered his initial opinion, and July 1991, when the arbitrator issued his final opinion. It did not. National cannot now, after receiving an unfavorable ruling from the arbitrator, object to the arbitrator's decision to rely on Levine. National has waived its delegation argument.

## C. Alleged Factual and Legal Errors of the Arbitrator

Next, National contends that the arbitration award must be vacated because it is contradicted by the finding of fact upon which it is based. National also claims that the award, if enforced, forces National to violate federal law and public policy. We will address these two related arguments together.

■ Generally, we will not vacate an arbitration award because the arbitrator made errors of fact or law. *Burchell v.*

*Marsh*, 58 U.S. (17 How.) 344, 348, 15 L.Ed. 96 (1855); *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 272 (7th Cir.1988); *Ethyl Corp.*, 768 F.2d at 183. Federal courts will not vacate an arbitration award merely because the arbitrator misinterpreted applicable law. *National R.R. Passenger Corp. v. Chesapeake and Ohio Ry. Co.*, 551 F.2d 136, 143 (7th Cir.1977). *See also Northrop Corp. v. Triad Int'l Marketing S.A.*, 811 F.2d 1265, 1268–69 (9th Cir.) (courts are bound to enforce an award based upon arbitrator's resolution of disputed issues even in the face of erroneous findings of fact or misinterpretations of law), *cert. denied*, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 219 (1987). This does not mean, however, that every arbitration award will be upheld. When arbitrators demonstrate a manifest disregard for the applicable law, courts will not enforce the award. *Health Servs. Management Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir.1992). In order for a federal court to vacate an arbitration award for manifest disregard of the law, the party challenging the award must demonstrate that the arbitrator deliberately disregarded what the arbitrator knew to be the law in order to reach a particular result. *Id.*[3]

■ These standards doom National's claim that the arbitration award should be vacated. The evidence of Barnett's eyesight was conflicting. While Levine's report could have been clearer, it did conclude that Barnett's vision satisfied DOT requirements. Given Levine's conclusion, we can only assume that Levine's medical opinion was that Barnett's vision in his left eye was correctable to 20/40. The arbitrator had conflicting evidence, weighed that evidence, then sought further findings from Levine, and finally decided that Barnett's eyesight satisfied the DOT regulations.

It is clear that the arbitrator's award does not reflect a manifest disregard for

---

**3.** We note also that courts will vacate an arbitrator's award if the complaining party demonstrates that the award was obtained by fraud or other corruption. *Hill v. Norfolk and Western*

*Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir.1987). There is no allegation of fraud or corruption in this case.

the law. After carefully weighing the evidence, particularly Levine's analysis, the arbitrator concluded that Barnett satisfied the DOT's 20/40 vision requirement. The arbitrator's award may be erroneous, but, even if it is, it does not evidence a manifest disregard for the DOT regulations. National has failed to show that the arbitrator deliberately disregarded what he knew to be the law.

National cites *Electronics Corp. of America v. International Union of Electrical, Radio and Machine Workers,* 492 F.2d 1255 (1st Cir.1974), to support its position that the district court erred when it refused to vacate the arbitrator's award. In *Electronics Corp.,* the First Circuit was confronted with a labor dispute where the employer had discharged an employee. There, over the course of several years, the employer had grown increasingly frustrated with the employee. In accordance with the company's disciplinary policies, the employer gave the employee several warnings, both oral and written, and, finally, suspended the employee from work before it fired the employee. The union then filed for arbitration. The arbitrator ordered the employee reinstated because the arbitrator believed—mistakenly—that the employee had not been suspended prior to being discharged. This, the arbitrator concluded, violated "industrial due process." *Electronics Corp.,* 492 F.2d at 1256. The employer sued challenging the award, and the district court granted summary judgment for the union. The issue was whether the arbitrator's award should stand if the central factual determination underlying it— the suspension of the employee—was erroneous. *Id.* at 1256. The First Circuit reversed and remanded the case, directing the parties to re-submit the issues to arbitration. *Id.* at 1258. The court found that the arbitrator based his decision on his misunderstanding that the employer had fired the employee without first suspending the employee. Despite the remand, the court cautioned against "the possibility that we may be interpreted as encouraging efforts to subvert the arbitral process" and emphasized that "our holding today is only that where *the* 'fact' underlying the arbi-

trator's decision is concededly a non-fact and where the parties cannot fairly be charged with the misapprehension, the award cannot stand." *Id.* at 1257.

*Electronics Corp.* is distinguishable from this case. Here, all of the facts, though conflicting, were available to the arbitrator. The arbitrator, faced with inconclusive evidence, sought Dr. Levine's aid. When Levine's initial report did not settle the issue, the arbitrator sought further clarification from him. After receiving Dr. Levine's final analysis that Barnett did in fact satisfy the DOT vision requirement, the arbitrator ordered Barnett reinstated.

In *Electronics Corp.,* however, the arbitrator reasoned from an incomplete, even erroneous set of facts. The arbitrator's award in that case rested on the arbitrator's mistaken understanding that the employer had not suspended the employee before discharging him. No such mistakes or omissions were made in this case. The arbitrator here had ample evidence upon which to decide the dispute even before seeking Dr. Levine's assistance. Prior to Dr. Levine's examination of Barnett, some evidence supported the conclusion that Barnett's eyesight did not meet DOT regulations, while other evidence suggested that it did. We are not prepared to say that by seeking additional evidence, or by evaluating conflicting evidence, the arbitrator erred so severely that the award should be vacated. We therefore affirm the district court's decision to enforce the arbitrator's award.

### III.

Finally, National appeals the district court's decision to grant the Union's motion for sanctions and attorneys' fees pursuant to Rule 11 of the Federal Rules of Civil Procedure. The district court sanctioned National because National first acquiesced in the arbitrator's decision to rely on Levine, then, after receiving an unfavorable award, complained about the arbitrator's "delegation." This, the district court concluded—as we do—waived any objection about the use of Levine.

Rule 11 authorizes the federal district courts to impose sanctions, including reasonable attorney's fees, upon attorneys or the parties they represent. Parties or their attorneys violate Rule 11 when they sign a pleading, motion, or other paper that, after reasonable inquiry, is not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Fed.R.Civ.P. 11. Rule 11 is also violated when parties or their attorneys bring legal action for any improper purpose, such as to harass or needlessly increase the cost of litigation. *Id.*

We review a district court's decision to award Rule 11 sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1121 (7th Cir.1992); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936–37 (7th Cir.1989). Rule 11 does not require that the district court make a finding of bad faith. *Local 879, Allied Indus. Workers of America v. Chrysler Marine Corp.*, 819 F.2d 786, 791 (7th Cir.1987). Instead, the district court need only "undertake an objective inquiry into whether the party or his counsel 'should have known that his position is groundless.' " *CNPA v. Chicago Web Printing Pressman's Union No. 7*, 821 F.2d 390, 397 (7th Cir.1987) (citations omitted).[4]

National's claims in the district court are colorable enough to avoid sanctions for frivolity. Although all of National's arguments are losers, they do not rise to the level of groundlessness required for Rule 11 sanctions. For example, National's argument that the arbitrator's award is based on factual and legal errors is not totally devoid of merit. Dr. Levine's initial report—that Barnett could not see all the

letters on the 20/40 line with his left eye, but that his vision was better than 20/50— is sufficiently ambiguous that it is at least arguable that the award rests on a questionable factual basis. Although we reject National's arguments on this and other points, we hold that the district court abused its discretion when it sanctioned National.

### IV.

We have carefully considered the other arguments raised by the parties and conclude that they lack merit and do not warrant discussion. We affirm the district court's decision to enforce the arbitration award. We reverse the district court's decision to sanction National.

AFFIRMED IN PART; REVERSED IN PART.

---

**4.** We note also that in suits brought pursuant to statutes that do not authorize an award of attorneys' fees, such as the Federal Arbitration Act and Section 301 of the Taft–Hartley Act, the prevailing party is entitled to attorney's fees if the opponent's suit has no merit or is frivolous, that is, if it is brought in bad faith to harass rather than to win. *Chrysler Motors Corp. v.* *International Union*, 959 F.2d 685, 689 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992); *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1167 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985). In this case, the district court awarded sanctions pursuant to Rule 11 only.