**WALTERS SHEET METAL CORPORATION, Plaintiff–Appellant,**

v.

**SHEET METAL WORKERS LOCAL NO. 18, Defendant–Appellee.**

No. 89–2136.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1990.

Decided Aug. 24, 1990.

Charles W. Pautsch, James B. Sherman, Wessels & Pautsch, Milwaukee, Wis., for plaintiff-appellant.

Matthew R. Robbins, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, Milwaukee, Wis., for defendant-appellee.

Before BAUER, Chief Judge, WOOD, Jr., and KANNE, Circuit Judges.

BAUER, Chief Judge.

This case is before us on appeal from the district court's decision denying Walters Sheet Metal Corporation's ("Walters") motion to vacate an arbitration award in favor of Sheet Metal Workers Local No. 18 ("the Union"). For the following reasons, we affirm.

## I.

On July 31, 1986, Robert Batzler, Secretary–Treasurer of the Union, noticed sheet metal work being performed at Zarder's Restaurant in Milwaukee. Batzler approached the two workers, apparently to inquire about their union membership and their employer. Batzler was informed that neither belonged to the Union, even though their employer, Walters, as a member of the Sheet Metal and Air Conditioning Contractors' Association of Milwaukee, Inc. ("the Association"), was a signatory to the collective bargaining agreement with the Union. Batzler then contacted Jim Kanehl, a shareholder of Walters, who claimed that the two workers were employed by Air Care Systems ("Air Care"), a separate company not a party to the collective bargaining agreement.

On August 11, 1986, the Union filed a grievance against Walters, claiming that it was employing non-union people to install sheet metal in violation of the bargaining agreement. In particular, the Union claimed that Air Care was the alter ego of Walters and that Walters operated Air Care in order to circumvent the provisions of the bargaining agreement. Attached to the grievance was a questionnaire about the relationship between Walters and Air

Care. Because Walters refused to answer the questionnaire, the Union filed an unfair labor charge against Walters. Walters thereafter answered the questionnaire. The parties, however, could not agree to settlement terms, and eventually reached the deadlock stage of the dispute resolution process. The Union sought arbitration pursuant to the collective bargaining agreement.

On May 19, 1987, the arbitration was to be held before the Local Joint Adjustment Board for the Sheet Metal Industry ("the Local Board"). Although the Local Board convened, it declined to hear the case because it was unable to decide "on the composition of the Joint Adjustment Board and the Procedures to conduct the hearing under the New Procedural Rules." Minutes of the Local Board, May 19, 1987.

On May 21, the Union appealed to the National Joint Adjustment Board ("the National Board"), requesting that the National Board appoint a panel to hear the case. Instead, the National Board sent a letter dated June 29 and addressed to Robert Batzler declining to appoint a panel and further stating:

> It is our understanding that the case was not heard locally because of the Local Union's objection to the Chapter Manager [1] being present during the hearing. It was the opinion of the [National Board] that each side is entitled to select its own representatives. It is our understanding that the case will be reprocessed for hearing before the Local Board in the near future.

The letter also was sent to Harold Lockwood, Executive Vice President of the Association, and John Bornschlagl, one of the Association's representatives on the Local Board.

Charles Swartz, Acting Secretary of the Local Board, notified Walters by certified mail that the next hearing would take place on July 16. Although his letter refers to the June 29 letter from the National Board, Swartz did not enclose a copy.

The Local Board held the hearing on July 16 as scheduled. Present were Robert Batzler, Paul Beyer, President of Walters, Elmore Kanehl, President of Air Care, Harold Lockwood, Walter's representative from the Association, and the members of the Local Board. On July 21, the Local Board found Walters guilty of several of the counts contained in the Union's charge and awarded the Union $110,396.00 in damages to be paid to the Milwaukee area Joint Apprenticeship Training Trust Fund. The damage award was subject to a full audit of Walters and Air Care. Walters, however, refused to permit the Union's auditor full access to its records and so the award stood as originally ordered.

Walters thereafter filed a motion in the district court to vacate the arbitration award. The Union counterclaimed for enforcement and attorneys fees and costs. The district court granted the Union's motion for summary judgment with respect to enforcement of the award, but denied recovery for attorneys fees and costs. Walters filed a timely appeal.

## II.

Judicial review of a labor arbitration award is very limited. *See United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). An arbitration award will be upheld on appeal as long as the award "draws its essence" from the collective bargaining agreement, *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361; that is to say, "so long as the interpretation can in some rational manner be derived from the agreement." *Amoco Oil Co. v. Oil, Chemical & Atomic Workers International Union*, 548 F.2d 1288, 1294 (7th Cir.1977). "[T]he award is valid provided it is an attempt to interpret the collective

---

**1.** The record does not identify who the Chapter Manager was and why the Union objected to his or her presence.

bargaining agreement rather than to apply the arbitrator's own ideas of right and wrong." *Miller Brewing Co. v. Brewery Workers Local Union,* 739 F.2d 1159, 1162 (7th Cir.1984).

■ Walters does not contend that the arbitration award rendered July 20 fails to draw its essence from the collective bargaining agreement.[2] Instead, it argues that a number of alleged procedural irregularities deprived it of a fundamentally fair hearing. Walters, however, failed to raise these irregularities before the Local Board at the July 16 hearing. "[P]rocedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). "The long established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use the information as a defense to compliance with an adverse award." *Chicago Newspaper Guild v. Field Enterprises, Inc.,* 747 F.2d 1153, 1157 (7th Cir.1984). Because Walters failed to raise the alleged procedural defects before the Local Board, it waived its right to do so in federal court.

■ In its reply brief, Walters acknowledges that most of its claims were waived. It contends, however, that its claim of a right to a representative at the July 16 hearing was not waived, because it did not learn of this right until after the hearing. Specifically, Walters claims that its right to a representative was guaranteed by the National Board in the letter dated June 29. Walters argues that, because it never received a copy of this letter, it did not bring a representative to the July 16 meeting and was prejudiced thereby. Although we agree that a party cannot waive a right unless it has knowledge of the right, we disagree that Walters' right to a represent-

ative was ever at issue, or that Walters was ever prejudiced by its alleged lack of knowledge.

The National Board's letter was sent in response to the Union's objection to the presence of the Chapter Manager at the May 19 hearing and to the Union's request that the National Board appoint a panel to hear the *Walters* case. In the letter, the National Board stated that each side was entitled to choose its own representatives. Apparently, the composition of the Local Board changed from arbitration to arbitration. As a structural matter, however, the Local Board was supposed to consist of three representatives from the Union and three representatives from the Association. We infer from the Union's objection to the Chapter Manager and request for a panel, and the National Board's response, that the Union did not like whom the Association had chosen to comprise its half of the Local Board. If this inference is correct, then the National Board's decision has nothing to do with Walters' alleged right to bring a representative along on July 16. We admit, however, that this inference may be incorrect, because the identity of the Chapter Manager and the Union's objections to his or her presence remain a mystery. Thus, instead of objecting to the Association's choice of panel members, the Union could have been objecting to Walters' choice of advocate. We can only speculate over many of the events which transpired in this case: the record is incomplete and Walters' brief less than enlightening.

Even if Walters' right to a representative was contested, and the National Board was not referring to the composition of the Local Board but rather to Walters' choice of advocate, Walters' alleged lack of knowledge does not require vacation of the arbitration award. Walters claims it did not know of its right to a representative because it never received a copy of the letter

---

**2.** Walters does argue that the damage award of $110,396 fails to draw its essence from the collective bargaining agreement. That amount was set subject to a full audit of Walters' accounts. Walters, however, refused to let the auditor review its records in order to determine the accuracy of the amount. It now challenges this amount, effectively asking this court to do the task of the auditor. We refuse.

from the National Board.[3] The blame for this lies with Walters. Harold Lockwood, Walters' former representative from the Association, *was* provided with a copy of the National Board's letter. Although Walters had withdrawn authority from the Association to act as its representative at an earlier date, there is no indication that Walters notified the National Board of this change and thus no reason to believe that the National Board should have notified Walters rather than Lockwood. At a minimum, Lockwood remained Walters's apparent agent. If Lockwood then failed to inform Walters of the letter (perhaps he did, perhaps he did not), that is between Walters and Lockwood, but not a matter for this court. Furthermore, Walters knew that the National Board had rendered some kind of decision with respect to the May 19 adjournment of the Local Board, because Charles Swartz referred to it in his letter notifying Walters of the July 16 hearing. Common sense would dictate that Walters follow up on this piece of information. Consistent with its dilatory conduct throughout its course of dealing with the Union, Walters did nothing. Moreover, we note that the minutes of the Local Board hearing of July 16 reflect that Walters was not without representation; Harold Lockwood spoke on behalf of Walters at this hearing.[4]

Because Walters has failed to show that the arbitration award does not draw its essence from the collective bargaining agreement, we affirm the district court's order refusing to vacate the award.

■ As a final matter, we address the Union's claim that it is entitled to attorneys fees and costs under Federal Rule of Civil Procedure 11. The district court refused to award sanctions against Walters. Its decision is reviewed under the abuse of discretion standard. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 930 (7th Cir.1989).

Walters must have made more compelling arguments to the district court than it made to this court, because sanctions appear appropriate from our perspective—especially in light of Walters' appellate brief. The district court found, however, that Walters raised arguments with sufficient merit to avoid Rule 11 sanctions. Indeed, Walters' more meritorious arguments (although still losers), such as the timing of the deadlock and whether certain of the Union's claims were time-barred, were abandoned on appeal. Employing the highly deferential standard of review applicable to the district court's Rule 11 decisions, we affirm the district court's refusal to award sanctions.

### III.

For the foregoing reasons, the decision of the district court is

AFFIRMED.

---

**3.** Walters charges the Local Board with misconduct for its failure to provide it with a copy of the National Board's letter. Walters, however, does not allege that the Local Board was under a duty to forward a copy of the letter to it. Absent such a duty, there is no misconduct in the Local Board's failure to forward the letter.

**4.** Walters also contends that any representation it or Lockwood may have attempted was ineffective because its role at the hearing was simply to answer questions. Charles Swartz's letter notifying Walters of the July 16 hearing requested that Walters "be present at this hearing to answer any questions the Board has regarding this matter." With a straight face, Walters asserts, "the logical assumption to be drawn from the statement requesting one's presence 'to answer questions' is that one is supposed to be a passive observer of the proceedings." Appellant's brief at 14. In the very next sentence, Walters states, "on the contrary, the procedural rules grant both Walters and the [Union] the right to actively present their cases." *Id.* Knowing the procedural rules, Walters cannot claim in good conscience that it thought its role at the July 16 hearing was simply to answer questions.