**Victor M. BARDNEY, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 96 C 5034, 92 CR 1043.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 11, 1996.

## OPINION AND ORDER

NORGLE, District Judge:

The court ordered Attorney R. Eugene Pincham ("Pincham") to file by September 13, 1996, a written response detailing why the court should not impose Rule 11 sanctions for various misrepresentations and frivolous arguments found within the above-entitled Petition. He did not comply with the order and has yet to file a response. For the following reasons, the court orders Pincham to pay to the clerk of this court a $1,000 fine pursuant to its authority under Federal Rule of Civil Procedure 11.

### I.

On August 14, 1996, Pincham filed for Victor M. Bardney ("Petitioner") a "Petition For Discharge/Or Sentence Reduction" ("Petition"). Pincham signed the final page of the Petition.

On August 29, 1996, the court issued a minute order with the following text:

The signer of the petition, Attorney Pincham, shall respond in writing on or before September 13, 1996, to show cause why sanctions should not be imposed against him for violations of Federal Rule of Civil Procedure 11(b)(1) & (2), in that he:

(a) has failed in the petition to disclose, mention or cite the decision of the Seventh Circuit Court of Appeals affirming the judgment of conviction issued by the trial court;

(b) has failed to disclose, mention, or cite to the denial of rehearing by the Seventh Circuit Court of Appeals, and the denial of certiorari by the United States Supreme Court;

(c) has raised frivolous issues in bringing the petition pursuant to 28 U.S.C. § 2255, by raising issues identical to those raised on direct appeal and rejected by the Seventh Circuit Court of Appeals (with the exception of the *Bailey* issue);

(d) has failed to research and/or cite to applicable cases decided by courts within the Seventh Judicial Circuit regarding the *Bailey* decision.

As of the date of this Order, Pincham has neither filed his court-ordered response nor communicated to the court a reason for his failure to file such a response. The court gave Pincham ample opportunity to respond and to make his arguments known on public record. He has not done so.

### II.

#### A. Opportunity to Respond

The court is well aware that prior to the imposition of sanctions, it must issue an order giving notice to the alleged violator of possible sanctions, and giving that individual an opportunity to respond. *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir.1996); *See also* Fed.R.Civ.P. 11(c)(2)(B) (monetary sanctions "may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attor-

neys are, to be sanctioned"). The court is also mindful that the plain language or the Rule requires that an "order from the court must describe the specific conduct which appears to violate Rule 11 and direct the party or counsel to show cause why it has not violated the rule" to ensure due process. *Id.;* Fed.R.Civ.P. 11(c)(1)(B).

As directed by the rule, the court entered an order describing the specific conduct that appears to violate subsections of Rule 11, and directed Pincham to show cause why the court should not impose sanctions. Pincham neglected to respond. This, in itself, is improper; an order issued pursuant to Rule 11 "is not a gnat to be brushed off with the back of the hand." *Szabo Food Svc., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1084 (7th Cir. 1987).

However, Pincham's neglect is to his detriment. Pincham ignored the opportunity to respond to the court's suspicion of the propriety of the arguments within the Petition. Pincham's indifference to the court's order leaves the court without argument as to why sanctions should not be imposed, and forces the court to postulate hypothetical arguments.

### B. Rule 11 Sanctions

The Federal Rules of Civil Procedure apply in the context of petitions for writs of habeas corpus to the extent that they are not inconsistent with the Habeas Corpus Rules. *See* Fed.Rule Civ.Proc. 81(a)(2). The court acknowledges that because of the "special and important role of the Great Writ ... [,] Rule 11 sanctions should be sparingly used in cases" brought pursuant to 28 U.S.C. § 2255. *United States v. Gramley,* No. 94 C 1441, 1996 WL 79379, *2 (N.D.Ill. Feb. 20, 1996). But such sanctions are not *per se* improper in habeas lawsuits; conduct similar to that exhibited by Pincham necessitate them.

Rule 11 of the Federal Rule of Civil Procedure states, "Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name." Fed.R.Civ.P. 11(a).

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b).

"The purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility ... to validate the truth and legal reasonableness of the papers filed." *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 126, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989). Put another way, "[t]he essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Business Guides, Inc., v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 546, 111 S.Ct. 922, 930, 112 L.Ed.2d 1140 (1991). When the court deems Rule 11 to have been violated, it has sound discretion to impose sanctions. *Mars Steel Corp. v. Continental Bank,* 880 F.2d 928, 936 (7th Cir.1989) (en banc). If the court enters a sanction order, it must evaluate each basis presented for sanctions, *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 752 (7th Cir.1988), and provide enough explanation that the appellate court can review the substance of the

order. *LaSalle Nat. Bank of Chicago v. County of DuPage*, 10 F.3d 1333, 1338 (7th Cir.1993).

In determining whether a party or attorney violated Rule 11, the court need not "make a finding that the transgressor acted in bad faith." *National Wrecking Co. v. International Brotherhood of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir.1993). Rather, the district court need only "undertake an objective inquiry into whether the party or his counsel 'should have known that his position is groundless.'" *Burda v. M. Ecker Co.*, 2 F.3d 769, 774 (7th Cir.1993).

Having ruled over the trial proceedings, the court is familiar with the instant case. Upon initial review of the Petition signed by Pincham, the court noticed patent flaws and omissions in it. Pincham waived his opportunity to address the defects and omissions. The court will address them separately.

*1. Failure to Disclose, Mention or Cite Superior Court Decisions*

Attorneys have "a continuing duty to inform the Court of any development which may conceivably affect an outcome" of the litigation. *Fusari v. Steinberg*, 419 U.S. 379, 391, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975) (Burger, C.J., concurring). "This is so, even where the new developments, new facts, or recently announced law may be unfavorable to the interests of the litigant. Cf. Model Rules of Professional Conduct, Rule 3.3 (1983) (candor toward tribunal)." *In re Universal Minerals Inc.*, 755 F.2d 309, 313 (3d Cir.1985). *See also* Model Rules of Professional Conduct for Federal Lawyers, Rule 3.3 (1990); ABA Model Rules of Professional Conduct, Rule 3.3 (1994); Rules of Professional Conduct for the Northern District of Illinois, Rule 3.3 (1991).

Pincham neglected to inform the court of the judicial proceedings subsequent to the trial. After the court undertook its own research, the court unearthed several notable facts. Petitioner appealed the judgment and conviction entered by the court to the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit affirmed the conviction in its totality. The Seventh Circuit later denied a petition for rehearing, and the United States Supreme Court denied Petitioner's petition for certiorari. This failure to inform the court of proceedings subsequent to the trial, by itself, is an ethical violation. Pincham failed to mention the most relevant case that exists: the direct appeal to the Seventh Circuit, the very tribunal to which Pincham argued—and the appellate court rejected—the same issues raised in the instant Petition, except for the "Bailey" issue. While the Order was unpublished, and thus could not be cited or used as precedent, it remains the law of the case. Pincham's failure to inform the court of the appeal, and the proceedings subsequent to it, rises to an unacceptable and sanctionable level.

*2. Raising Issues Identical to Those Raised and Rejected On Direct Appeal*

Rehashing arguments used and disposed of on direct appeal is inappropriate in a habeas petition brought pursuant to 28 U.S.C. § 2255.

'A Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal.' *Daniels v. United States*, 26 F.3d 706, 711 (7th Cir.1994), (quoting *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)). Although res judicata does not apply in § 2255 proceedings, 'the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in prior § 2255 proceedings.' *Taylor v. United States*, 798 F.2d 271, 273 (7th Cir.1986), cert. denied, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 983 (1987). Indeed, in the absence of changed circumstances of fact or law, we will not reconsider an issue which was already decided on direct appeal. *Id.*

*Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir.1995). These are neither modern nor novel legal propositions. Indeed, the *Olmstead* case is among the Seventh Circuit progeny of *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). The progeny not only includes the above-cited *Taylor*, *Belford* and *Daniels*, but *United States v. Keane*, 852 F.2d 199, 203 (7th Cir.1988), *United States v. Wiman*, 77 F.3d 981, 988 (7th Cir.1996), and a slew of other

cases. *See Sanders v. United States,* 373 U.S. 1, 13–17, 83 S.Ct. 1068, 1076–78, 10 L.Ed.2d 148 (1963); *Norris v. United States,* 687 F.2d 899, 900 (7th Cir.1982); *Demaro v. Willingham,* 401 F.2d 105, 106 (7th Cir.1968); and *De Welles v. United States,* 372 F.2d 67, 70 (7th Cir.), cert. denied, 388 U.S. 919, 87 S.Ct. 2140, 18 L.Ed.2d 1365 (1967).

As already stated, Pincham neglected to inform the court of the appeal to the Seventh Circuit Court of Appeals. However, the court became aware of the appeal through research, and is now aware that the Seventh Circuit affirmed the conviction and sentence imposed by the court in their totality. Moreover, the court now knows that Petitioner's request for an appellate rehearing was denied, and that the United States Supreme Court denied certiorari. These are important findings when considering what claims can and cannot be raised by a § 2255 collateral attack of the judgment and conviction.

The Petition signed by Pincham can be divided into eight arguments, the first seven of which are identical to arguments raised on direct appeal and summarily rejected by the Seventh Circuit. The court will address the first seven arguments in turn.

First, Pincham argues that "the trial court violated Petitioner Bardney's 5th Amendment Constitutional right not to incriminate himself, and his 6th Amendment Constitutional right to counsel and to due process of law" when this court denied Petitioner's motion to suppress incriminating statements made by Petitioner without an evidentiary hearing. The Seventh Circuit rejected this argument on the direct appeal; "[n]o factual dispute confronted the district court, and it was within its discretion to decide the motion [to suppress] on the uncontroverted facts before it, without a hearing." *United States v. Bardney,* No. 93–4037, 1995 WL 41313, at *1 (7th Cir. Feb. 1, 1995). Moreover, the Seventh Circuit held that "the district court did not commit clear error by concluding that Bardney understood his Miranda rights and voluntarily waived them," *Id.* at *2, thus affirming the admission of the statements.

Second, Pincham argues that the court's "denial of [Petitioner's] motion for the Government's identification and production of the Government's cooperating individuals (informants) violated [Petitioner's] 6th Amendment Constitutional rights to compel the attendance of witnesses on his own behalf, to prepare and present a defense, due process and fundamental fairness." Pincham contends that the "true reasons ... for the Government's non-disclosure of the identity and non-production of the informants was because the Government desired to cleanse itself of the informant's nefarious activities. Again, the Seventh Circuit already spurned this argument." In so finding, the Seventh Circuit stated,

> Regardless of the merits of Bardney's argument—which we find suspect—he cannot now complain, for the government gave Bardney an avenue to obtain the necessary information and Bardney simply did not follow it. The names of the CIs were revealed at side bar, and the next day the AUSA gave Bardney's counsel the name and phone number of the attorney that was representing the CIs. Bardney's counsel allegedly called the attorney and left a message, but made no further efforts. Bardney could have subpoenaed the CIs; he failed to do so. Thus the government fulfilled any responsibility it might have had.

*Id.* at *2.

Third, Pincham argues that the court "erroneously prohibited [Pincham's] closing argument on the Government's cooperating individual's absence as a trial witness." Fourth, Pincham argues that "the jurors were dubious about the government's evidence, and the government's cooperating individual could have aided Petitioner ... in establishing his defense of mistake identification." These two arguments were among "the balance of Bardney's claims [which were] wholly without merit," and, thus, the Seventh Circuit "decline[d] to address them." *Id.* at *4.

Sixth, Pincham contends that "[Petitioner's] Constitutional right to be informed of the nature and cause of the accusation and of confrontation and cross-examination were violated by evidence of [Petitioner's] failure to file income tax returns and refusal to allow his counsel's cross-examination thereon."

Not so, said the Seventh Circuit; "[t]he trial court did not err in admitting the evidence of Bardney's failure to file income tax returns." *Id.* at \*3.

Seventh, Pincham avers that "the admission ... of a 1989 police raid of [Petitioner's] ... house in which narcotics were discovered, and for which he was tried and acquitted, .. violated [Petitioner's] Constitutional right against being subjected for the same offense to be twice put in jeopardy, due process of law and fundamental fairness." The Seventh Circuit affirmed this court's admission of the 1989 police raid. The Seventh Circuit found the evidence to be relevant, and found that the court's determination that the probative value of the evidence was not outweighed by the danger of undue prejudice was not an abuse of discretion. *Id.* at \*3.

Contrary to unequivocal Supreme Court and Seventh Circuit directive, Pincham resubmitted to this court seven arguments already submitted to, and rebuffed by, the Seventh Circuit. As recognized by the Supreme Court, such a "[b]aseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless [attorney] quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 398, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990). "Moreover, the imposition of such sanctions on abusive [attorneys] is useful to deter such misconduct." *Id.* Rule 11 provides litigants and their attorneys with an incentive to "stop, think and investigate more carefully before serving and filing papers." *Id.*

The instant Petition has already been a hardship on the federal judicial system. The clerk of the court docketed the Petition and assigned it to this court. This court made its initial review of the Petition, and began researching the merits of each argument found within the Petition. The court then became aware of the appeal and the other subsequent proceedings, and deemed it necessary to author this opinion. The judicial wheels are now turning, with no reasonable justification, and this order serves as the brake.

Had the court not become aware of the outcome of the direct appeal to the Seventh Circuit, it may have issued a ruling completely in contradiction to the findings found in *United States v. Bardney,* 46 F.3d 1134, No. 93–4037, 1995 WL 41313 (7th Cir. Feb. 1, 1995), and the Seventh Circuit would have had to review the instant collateral appeal, and affirm its own holdings found within the original affirmance. Had this happened, a great deal more judicial resources would have been wasted.

In sum, Pincham simply attempted to "drop [the Petition] into the hopper and insist[ed] that the court ... undertake bothersome factual and legal investigation." *Mars Steel Corp. v. Continental Bank NA,* 880 F.2d 928, 932 (7th Cir.1989). Pincham neglected to fulfill the requirements of Rule 11; he forgot "to study the law before representing its contents to a federal court ... [and neglected to perform the] necessary work to find the law before filing the brief." *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.), cert. denied, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986). Instead, Pincham placed the "burden of study and illumination on ... the court." *Id.* This is unacceptable federal practice, and the court is compelled to impose sanctions.

*3. Failure to Research and Cite to Applicable Cases Decided by Courts Within the Seventh Judicial Circuit Regarding the Bailey Decision*

The eighth argument, the only argument within the Petition that was not raised on appeal, is also the only argument within the Petition that is properly raised on this collateral review of the sentence and conviction. In that argument, Pincham argues that the sentence imposed by the court was improper because, when utilizing the definitions of "use" and "carry" set forth in 18 U.S.C. § 924(c)(1) (which were clarified in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)), Petitioner neither "used" nor "carried" a gun in connection with the crime for which the jury found Petitioner guilty. Without discussing the merits of the argument, the court does not object to the actual arguments raised. However, the

court takes issue with the case law cited in the Petition. Pincham includes a citation and short discussion of the *Bailey* decision, and four cases from the District of Minnesota. Not only is a district court mere persuasive authority, but the District of Minnesota sits within the Eighth Judicial Circuit; this court sits in the Seventh Judicial Circuit. When Pincham signed the pleading, numerous cases had been decided by the District Court and the Seventh Circuit on the "Bailey" issue.

This is not to say that the failure to cite to applicable Seventh Judicial Circuit law is in-and-of-itself sanctionable neglect. However, given the conglomeration of misconduct and disregard to ethical and legal obligations, the court finds these actions to be among the very many sanctionable misrepresentations submitted to the court. Though the *Bailey* argument may bear merit, an attorney "cannot expect to avoid all sanctions under Rule 11 merely because the pleading or motion under scrutiny was not entirely frivolous." *Melrose v. Shearson/American Express, Inc.*, 898 F.2d 1209, 1215 (7th Cir.1990). "Bailey" is only one part of the Petition. Indeed, while Bardney has been incarcerated, some of the cases not researched or cited by his attorney may augur for reduction of his sentence.

### 4. Type and Amount of Sanctions

"[T]he sanction selected should fit the conduct sanctioned." *Burda*, 2 F.3d at 776. Pincham's conduct should not be imputed to the Petitioner, a prisoner with no legal training. However, the court is aware that Pincham is experienced in the legal profession. Pincham decided to "play by rules of [his] own invention," *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir.1994), when filing a Petition raising issues already determined by the Seventh Circuit and when refusing to respond to this court's earlier order. Pincham cannot win such a game. The court orders Pincham to pay to the clerk of the court a $1,000 fine as a result of his noncompliance with orders of this court and Seventh Circuit law. The court grants Pincham leave to amend the Petition, and awaits an amended one.

### IV.

For the foregoing reasons, the court finds Pincham's conduct to be violative of Federal Rule of Civil Procedure 11. The court imposes a $1,000 monetary sanction to be paid to the clerk of the court within fourteen (14) days.

IT IS SO ORDERED.